The action was commenced on the 16th December, 1874, to recover the sum of one hundred and fifty dollars, alleged to be due by bond for that amount, dated March ___, 1863. The bond was alleged to have been given as the price of a horse sold the defendant Latham at that time, with the other defendant as security.
The purchase of the horse at the time the alleged note bore date, and at the alleged price, was admitted, but the defendant denied the execution of the bond. They also as matter of defence alleged that *Page 221 
the bond was given for an illegal consideration, and the cause of action was barred by the statute of limitations, and further that the debt had been paid and satisfied.
The plaintiff as a witness in his own behalf, testified that some time during the late war, the defendant Latham, then a (284) volunteer in the army, came to his house and desired to purchase his horse, then three years old, if he could swap him to one Brown. The witness told Latham he would take one hundred and fifty dollars in good money for the horse, but that he would not take Confederate money in payment. Latham then left but returned the next morning in company with Brown, and he and Brown agreed to swap. Latham thereupon agreed to purchase the horse upon the terms proposed, upon a credit of nine months, with the defendant Worth as security. The parties then went to Worth's house for the purpose of having the note drawn, Latham taking the horse and carrying him away. It was well understood by all the parties, that the plaintiff would not take Confederate money for the horse. Worth wrote the note, payable to the plaintiff nine months after date, for one hundred and fifty dollars, payable in good current money, such as the defendant Worth would sell his stock for. Both the defendants signed the note and after reading it, delivered it to the plaintiff. He was anxious for Worth to write the note because he knew how to write a good one. The defendant and one Maxwell came to the witness and insisted on paying off the note in Confederate money and offered him some cotton yarn, but he declined to receive such payment and demanded good money. Some time thereafter, Maxwell and Latham came to the plaintiff's house, and Latham told the plaintiff that his money was left at Worth's house, and he must take the note over there and give it up and get the money, or he, Latham would sue him and make him give it up. The money left at Worth's was Confederate money. He thought that Latham could make him give the note up and he therefore carried the note to Worth's and left it and has never seen it since. He has never received any thing for the horse. The defendant Worth offered to pay him Confederate money for the note at the time he surrendered it, but he declined to receive it. He did not know what use the defendant Latham had for the horse. He did (285) not know whether or not the note was under seal, but he thought it was a good note. He depended on Worth to write the note and supposed it was all right.
Jacob Lewis, a son of the plaintiff, testified that the horse was worth one hundred dollars. He saw the note. It was a good note, but he did not remember whether or not it was under seal. *Page 222 
One Telly testified that he had a talk with Latham last winter, before the commencement of this action, and requested him to pay the money due the plaintiff. He refused to pay anything and said "that note was in other fingers" than the plaintiff's, and that he had paid all on it he ever expected to pay.
The defendant Latham testified that at the time of the purchase, he was in the Confederate army, a member of the 1st N.C. Cavalry, and was at home on detail, for the purpose of obtaining a horse. That he went to the plaintiff to buy a horse to ride in the army, and found that his horse would not do. After he and Brown had agreed to swap, he went to the plaintiff's house in company with Brown, and the plaintiff agreed to accept his note with Worth as security, for $150, in old State money; the plaintiff refusing to take Confederate money. That about the time they arrived at Worth's, the plaintiff changed his mind and directed Worth to write the note payable "in good current money such as Worth would sell his stock for." That he and Worth executed the note and delivered it to the plaintiff. When the note fell due he sent Confederate money to Maxwell to pay it off. He afterwards heard that the plaintiff would not accept the Confederate money, and he and Maxwell went to the plaintiff's house, and the plaintiff declined to accept it and demanded specie. The defendant Latham then told the plaintiff that his money was at Worth's, and if he did not go and get it and leave the note with Worth, he, Latham, would sue him, and try it out at law. In a few days the plaintiff carried the note to Worth's and left it. but did not accept the Confederate money. Soon (286) afterwards Worth gave the note to the witness. He stuck it in his pocket and lost it, and has never seen it since. Did not know whether or not the note was under seal. He could not read. This was in the year 1864.
There was other evidence introduced, which being irrelevant is not necessary to be stated.
His Honor instructed the jury, that there was no evidence of a payment of the note. Upon the question of illegal consideration, that if the defendant Latham purchased this horse for the purpose of riding or using him in the army, or for the purpose of swapping him to use in the army, and if the plaintiff knew of such purpose at the time of the trade, then the consideration would be illegal and vicious, and the plaintiff could not recover.
The court reserved the question as to the statute of limitations.
The jury rendered a verdict in favor of the plaintiff for sixty dollars principal, with interest. *Page 223 
Upon the question reserved, the court being of the opinion that the plaintiff's cause of action was not barred by the statute of limitations gave judgment upon the verdict, and the defendants appealed.
We see no objection to the charge of his Honor, either on the question of payment, or of the illegal consideration of the note, which is the subject of this action. We also concur in his ruling, on the plea of the statute of limitations. "Every presumption is made against a wrong doer." Broome's Legal Maxims.
This is sound doctrine, and had it been carried to its legitimate results in this case, it would seem that the recovery should have been for the full amount of the note, $150 and interest. But as (287) the plaintiff does not complain, we will not do so for him.
The evidence, which is sent up with the record, left no room for doubt that the sole purpose of the plaintiff, in selling his horse, was to get a good price, and also good money for him, and that he took a note for the price, which has never been paid.
It further appears that the plaintiff, an old man, after repeated refusals to receive Confederate money, in discharge of his debt, was induced by the threats of the defendant, Latham, to leave the note with Worth, the surety thereto, and that the note went into the hands of Latham, who, after notice, failed to produce it on the trial. He says he lost it. Let that be conceded, but still be obtained it tortiously; and although the note may have been without a seal, it was upon him to show it; and having failed to do so, he must be content to take the measure which the law gives to a spoliator.
The judgment of the Superior Court is affirmed.
PER CURIAM. Judgment affirmed.