[No. 3429. Decided July 25, 1900.]

STANDARD FURNITURE COMPANY, *Appellant,* v. CON VAN ALSTINE, *Respondent.*

CONTRACTS AGAINST PUBLIC POLICY—CONDITIONAL SALE OF GOODS FOR IMMORAL USE.

A conditional sale of goods for use in a house of ill-fame, whereby the vendor retains title in himself, and reserves the right to take possession of the goods whenever he may deem himself insecure, even before maturity of the deferred payments, constitutes a contract against public policy, when the vendor has knowledge of the use to which the goods will be put, and such contract cannot be enforced in the courts.

SAME—ESTOPPEL.

Where a contract is void as against public policy, and hence unenforceable for that reason, the doctrine of estoppel cannot be invoked in aid of its enforcement.

Appeal from Superior Court, King County. — Hon. E. D. BENSON, Judge. Affirmed.

*George F. Aust* and *Osborn & Steele,* for appellant:

Knowledge that property, innocent in itself and a legitimate subject of bargain and sale, may or will be put to an unlawful use, does not render void a contract for its sale. *Faikney v. Reynous,* 4 Burr. 2069; *Hubbard v. Moore,* 24 La. An. 591 (13 Am. Rep. 128); *Mahood v. Tealza,* 26 La. An. 108 (21 Am. Rep. 546); *Michael v. Bacon,* 49 Mo. 474 (8 Am. Rep. 138); *Anheuser-Busch Brewing Ass'n v. Mason,* 46 N. W. 558 (20 Am. St. Rep. 580, 9 L. R. A. 506); *Kreiss v. Seligman,* 8 Barb. 439; *McKinney v. Andrews,* 41 Tex. 365; *Sprague v. Rooney,* 82 Mo. 493 (52 Am. Rep. 383); *Wallace v. Lark,* 12 S. C. 576 (32 Am. Rep. 516); *Tedder v. Odom,* 2 Heisk. 68 (5 Am. Rep. 25); *Tyler v. Carlisle,* 79 Me. 210 (1 Am. St. Rep. 301, and note).

A third person not a party or privy to a contract cannot question its validity on the ground that it is in contravention of public policy. The parties must be *in pari delicto* before the defense can be made. The policy of the law is to leave the two parties to the unlawful contract where it finds them. *Murray v. Judson,* 9 N. Y. 73; *Lemon v. Grosskopf,* 99 Am. Dec. 61, note; *Boyd v. Barclay,* 34 Am. Dec. 765, note; *Andrews v. New Orleans Brewing Ass'n,* 20 South. 837 (60 Am. St. Rep. 509); *Woodworth v. Bennett,* 43 N. Y. 275 (3 Am. Rep. 706); *McDonald v. Lund,* 13 Wash. 412; *Kiewert v. Rindskopf,* 46 Wis. 481 (32 Am. Rep. 731).

*Ballinger, Ronald & Battle* and *Richard Winsor,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action brought by the appellant, a domestic corporation, for the recovery of certain furniture and house furnishing goods. The complaint

was, in form, that commonly used in this state for the recovery of personal property in specie. The respondent, who was defendant below, after denying the allegations of ownership and right of possession of the property in appellant contained in the complaint, pleaded affirmatively that the appellant claimed title to the property by virtue of a certain agreement in writing by which two certain women purchased the property and agreed to pay appellant therefor, but without further description as to the character of the agreement. He then pleaded the recovery of a judgment by himself against the purchasers named in the agreement, the issuance of an execution thereon, the seizure and sale of the property under the writ of execution, and his purchase of the property and its delivery to him at the execution sale. He pleaded further that the vendees were, at the time of the execution of the written agreement and the delivery of the property by the appellant to them, the keepers of a house of ill fame in the city of Seattle; that the appellant had knowledge at the time the agreement was entered into, and at the time the goods were delivered, that the vendees were the keepers of a house of ill fame, "and that the said goods so delivered and said written agreement aforesaid, were to aid and enable the said" vendees "to carry on and conduct a house of prostitution; . . . and that any sum remaining unpaid on account of said goods, if any did remain, was to be paid by said" vendees to the appellant "out of the earnings of said house of prostitution." The appellant, in reply, admitted the judgment, levy, and sale, and that it claimed title by virtue of a conditional contract of sale, but denied the other allegations of the affirmative answer. It then pleaded affirmatively the conditions of the contract under which the sale of the property was made, showing it to be a conditional sale, with "title, ownership, and possession of the property" reserved in itself until the pur-

chase price should be paid; with the right, also, to "take possession of the aforesaid personal property whenever it may deem itself insecure, even before maturity" of the deferred payments; that the purchase price was to be paid in monthly installments of $150 each, and that title should pass to the vendees when the last installment should be paid; alleged a breach on the part of the vendees of the conditions of the contract, that the respondent had refused to perform the same, and its election to declare the contract forfeited. It then alleged, by way of estoppel, that the notice given of the execution sale at which the respondent purchased expressly recited that the property was to be sold subject to the contract of sale between the appellant and its vendees, that the officer conducting the sale orally proclaimed that fact at the time he offered the property for sale, and that the sale was actually so made. At the trial, after the appellant had introduced its evidence and rested its case, the respondent called the president of the appellant and proceeded to examine him touching the affirmative matter alleged in his answer not admitted by the reply. Before the examination of the witness was concluded, the court announced that the evidence was sufficient to warrant the court in holding that the contract was void as against public policy. He thereupon refused to permit the appellant to offer proofs on the matter alleged in the reply as an estoppel, took the case from the jury, and entered judgment in favor of the respondent.

It is urged on behalf of the appellant that the evidence before the trial court upon which it based its judgment showed, at most, nothing more than that the appellant, at the time it entered into the contract of conditional sale and delivered the property to the vendees named therein, had knowledge that the vendees intended to put the property to an unlawful use; and that this fact is not sufficient

to justify the trial court in its holding that the contract
was void as against public policy.

It is true that it is held in many well considered cases,
and it is perhaps the weight of authority, that mere knowl-
edge on the part of a vendor of goods that the vendee de-
signs to and will put them to an immoral or illegal use, is
not of itself sufficient to bar an action brought to recover
the purchase price of the goods sold.   But in all of the
cases announcing this rule which have been brought to our
attention, the transaction was one in which the owner of
the goods at the time of their delivery to the vendee parted
with his title and right of possession, so that thereafter the
relation between the vendor and vendee was that of debtor
and creditor merely, or that of debtor and creditor with a
mortgage over to secure the deferred payments of the pur-
chase price.   The sale and delivery of the property was
complete, and no element of participation or aid in the
immoral or illegal design of the vendee could be imputed
to the vendor.   On the other hand, it is held by all of the
cases, even those which announce the rule contended for
by the appellant, that if the vendor has knowledge of the
immoral or illegal design of the vendee, and in any way
aids or participates in that design, or if the contract of
sale is so connected with the illegal or immoral purpose or
transaction of the vendee as to be inseparable from it, the
vendor cannot recover.   *Tatum v. Kelley,* 25 Ark. 209 (94
Am. Dec. 717) ; *Tracy v. Talmage,* 14 N. Y. 162 (67 Am.
Dec. 132) ; *Hill v. Spear,* 50 N. H. 253 (9 Am. Rep.
205) ; *Gaylord v. Soragen,* 32 Vt. 110 (76 Am. Dec.
154) ; *Aiken v. Blaisdell,* 41 Vt. 665 ; *Schankel v. Moffatt,*
53 Ill. App. 382 ; *Ralston v. Boady,* 20 Ga. 449 ; *Webster
v. Munger,* 8 Gray, 584 ; *Adams v. Coulliard,* 102 Mass.
167 ; *Graves v. Johnson,* 156 Mass. 211 (30 N. E. 818,
15 L. R. A. 834, and note to this case in 32 Am. St. Rep.
450) ; Beach, Modern Contract Law, § 457.

And there are cases which hold that knowledge on the part of the vendor that the purchaser intends to devote the property purchased to an illegal use will bar a recovery of the purchase price, even though he does no other act than deliver the property to the vendee. It was so held by the supreme court of the United States in *Hanauer v. Doane,* 12 Wall. 342; though the court seems to admit that there might be a distinction between the cases where the use to which the property is to be devoted is only *malum prohibitum,* or of inferior criminality, and the cases where it is to be used in aid of the perpetration of a heinous crime, such as treason, as was the fact in that case. See, also, *Tatum v. Kelley, supra; Milner v. Patton,* 49 Ala. 423; *Lewis v. Latham,* 74 N. C. 283; *Bickel v. Sheets,* 24 Ind. 1; *Steele v. Curle,* 4 Dana, 381.

Where the sale is absolute, though on credit, the vendee becomes the owner of the property purchased and has all the rights therein that any owner has over his own property, and he may make such use of it as to him seems fit, without let or hindrance from his vendor. Under an ordinary contract of conditonal sale, the law is different. The vendee thereunder, the title being reserved in the vendor, is a mere bailee of the property. If the use of the property be not prescribed in the contract of sale, the purchaser must, nevertheless, use it for a lawful and proper purpose, and in the way its nature contemplates it should be used, or else suffer a forfeiture of his contract. It is clear that the relation between the parties to the contract in the present case was something more than that of debtor and creditor merely, and it would seem it was something more than an ordinary contract of conditional sale. The appellant not only reserved "title, ownership, and possession of the property," but reserved the right to "take possession of the aforesaid personal property whenever it may deem itself insecure, even before the maturity" of the deferred

payments. This practically left the control of the use of the property with the appellant; and, as the evidence shows that it had knowledge of the immoral and illegal use to which the vendees intended to and did put the property, it is hard to conceive why it did not aid and participate in that immoral and illegal use. The distinction between *knowing* that a buyer is intending to put the property to some unlawful use, and participating in that unlawful intent, is, to say the least, somewhat refined; and where a vendor, for the mere sake of gain, makes a contract, the effect of which is to put his own property in the hands of persons who will use it to conduct a house of prostitution, knowing it will be so used, the courts ought not to be astute to find nice distinctions which will enable him to avoid the consequences of his acts. It must be borne in mind that at common law it was an indictable offense to keep a house of ill fame, or to let a house knowing it was to be used for the purpose of prostitution (Wharton, Criminal Law, § 1459) ; that in this state these acts are made misdemeanors by statute (Ballinger's Code, §§ 7239, 7261) ; and that, "Any contract auxiliary to the keeping of a bawdy-house, or otherwise encouraging prostitution, is void." Bishop, Contracts, § 506 ; *Dougherty v. Seymour,* 16 Colo. 289 (26 Pac. 823) ; *Hunstock v. Palmer,* 4 Tex. Civ. App. 459 (23 S. W. 294) ; *Chateau v. Singla,* 114 Cal. 91 (45 Pac. 1015, 33 L. R. A. 750, 55 Am. St. Rep. 63) ; Beach, Modern Contract Law, § 1443.

We are aware that the appellant, though it admits that it had knowledge at the time it entered into the contract that its vendees were prostitutes, and that the house where they lived and where the goods were delivered was in a section of the city known as "The Tenderloin" district, contends that the evidence fails to show that it had knowledge that the house was kept as a house of ill fame. A

perusal of the entire record, however, does not leave this question in doubt. Nor was there such a substantial conflict in the evidence thereon as to compel the trial court to submit the question to the jury.

It is further contended that the trial court erred in refusing to permit the appellant to offer proofs of the matter alleged in the reply by way of estoppel, but in this we find no error. No principle of law is better settled than that a contract prohibited by law or morality is void as against public policy. It is because of the public interest, and not the desire to aid the defendant, that the courts refuse to enforce such a contract, and hence the doctrine of estoppel has no application. Greenhood, Public Policy, Rule 126, and illustrations there given; Beach, Modern Contract Law, § 1499; *Turnbull v. Farnsworth,* 1 Wash. T. 444; *Ah Doon v. Smith,* 25 Ore. 89 (34 Pac. 1093).

The judgment is affirmed.

DUNBAR, C. J., and REAVIS and ANDERS, JJ., concur.