MRS. J. E. WAGGONER v. WESTERN CAROLINA
PUBLISHING COMPANY.

(Filed 23 December, 1925.)

**1. Principal and Agent—Scope of Agent's Authority—Ratification—Newspaper Circulation Contest.**

   Where the plaintiff has been induced by the false and fraudulent representation of the agent of a newspaper in a circulation campaign, to pay out her own money for subscriptions for newspapers, sent by her to other persons, and has knowingly retained the money: *Held,* upon the principle of ratification of an agent's act the defendant newspaper may not avoid liability upon the ground that the agent was acting beyond the scope of his authority to the plaintiff's knowledge.

**2. Gaming—Newspaper Circulation Contest—Fraud—In Pari Dilicto—Contracts.**

   Where the agent of the defendant in a newspaper circulation contest has wrongfully induced the plaintiff to pay to him her own money for

sending the newspapers to others, and she sues upon the agent's fraud and deceit, recovery may be had upon the grounds alleged, and the position of the defendant that the transaction was against good conscience and public morals, and that no recovery could be had because plaintiff was *in pari dilicto*, is unavailable.

**3. Contracts—Public Policy—Immoral Contracts—Actions.**

A contract contravening sound public policy or *contra bonos mores* is void, and an action thereon may not be maintained in our courts.

APPEAL by defendant from *Stack, J.,* at May Term, 1925, of CATAWBA.

Civil action to recover the sum of $500 alleged to have been fraudulently obtained from the plaintiff by the defendant's agent and representative while conducting a subscription prize contest.

It is alleged, and supported by evidence, that the defendant is engaged in the publication of a newspaper, *The Times Mercury,* at Hickory, N. C.; that during the month of November, 1922, in an effort to increase the circulation of said newspaper, the defendant inaugurated a subscription campaign, in which prizes were offered to successful contestants, according to certain terms, rules, conditions and provisions, duly published in said newspaper prior to and during said campaign; that the defendant's agent, one Stevens, who was in charge of and conducting the campaign for the defendant and who was informed at all times as to the standing of the different contestants, falsely and fraudulently represented to plaintiff that if she would put, first $200 and then later $300, in said campaign, subscribing out of her own funds for the equivalent of 100 and later 150 copies of the paper at the price of $2.00 per annum, and sending them to such persons as she cared to name, she would thereby certainly win the first prize offered, to wit, a Studebaker automobile; that relying upon these representations, which were false and fraudulently made, the plaintiff was induced to part with $500 in the manner suggested; that she did not win the first prize, or the automobile, though she did win the third prize, a diamond ring, which her husband carried home, but which, according to plaintiff's testimony, she did not accept—same having been tendered back to the defendant, before and at the time of trial, and that the defendant received her money under the conditions above set out and refused to return any part of it after notice from the plaintiff and before any of the names furnished by her had been placed on the defendant's subscription list, or at least before the papers were mailed to those from whom she did not have bona fide subscriptions.

Upon denial of liability and issues joined, the jury returned the following verdict:

"1. Did the defendant, through its agent, Stevens, fraudulently obtain from the plaintiff $500 in cash, as alleged in the complaint? Answer: Yes.

"2. If so, what amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $500 with interest thereon from 29 November, 1922."

From a judgment on the verdict in favor of plaintiff, the defendant appeals, assigning errors.

*A. A. Whitener* for plaintiff.
*R. J. Mander, J. W. Aiken* and *Self & Bagby* for defendant.

STACY, C. J., after stating the case: The defendant earnestly contends that if the false and fraudulent representations charged against its agent were made by him, he was acting beyond the scope of his authority, without the knowledge, consent or contrivance of the defendant, and contrary to the published rules under which the contest was being conducted, and that all this was done with the full knowledge of both plaintiff and defendant's agent, for which reason, defendant says, the plaintiff ought not to be permitted to maintain this action.

In reply to this position, it would seem to be sufficient to point out that, with full knowledge of all the circumstances, the defendant has received and still holds the money fraudulently obtained by its agent from the plaintiff. The defendant will not be permitted to repudiate the act of its agent as being beyond the scope of his authority, and at the same time accept the benefits arising from what he has done while acting in its behalf. *Starkweather v. Gravely,* 187 N. C., 526. It is a rule too well established to admit of debate that if a principal, with full knowledge of the material facts, takes and retains the benefits of an unauthorized act of his agent, he thereby ratifies such act, and with the benefits he must necessarily accept the burdens incident thereto or which naturally result therefrom. The substance of ratification is confirmation after conduct. 2 C. J., 467. It is also a settled principle of ratification that the principal must ratify the whole of his agent's unauthorized act or not at all. He cannot accept its benefits and repudiate its burdens. *Bank v. Justice,* 157 N. C., p. 375.

The defendant, therefore, having taken and received the benefits arising from the unauthorized act of its agent, must be held liable to suit upon the principle of ratification, if the act of the agent imports such liability. *Sprunt v. May,* 156 N. C., 388.

Responsibility for the act of its agent having been resolved against the defendant under the principle of ratification, it is thereupon, in view of this position, earnestly contended that the understanding between plaintiff and defendant's agent was a thoroughly immoral conspiracy, contrary to public policy, and that the courts ought not to aid the plaintiff in her attempt to enforce any supposed rights which she may have, arising out of such understanding or agreement.

It is undoubtedly the law that whatever contravenes sound morality, or is *contra bonos mores,* vitiates any contract and renders void any engagement founded upon it. *"Ex turpi contractu actio non oritur"* was the maxim of the common law and it is still good today. No action can be maintained on an immoral or iniquitous contract. *Munday v. Whissenhunt,* 90 N. C., 458. The courts will not paddle in muddy water, but in such cases the parties are remitted to their own folly. And if the purpose of the present suit were to recover the automobile, or to force the defendant to live up to the agreement of its agent, the plaintiff, had she participated or acquiesced in the fraud, might be face to face with the lesson, taught every day in the school of experience, that she cannot safely put her money in the hands of one who promises to return it with usury made out of ill-gotten gains. The expression, "He that will steal for me will steal from me," coined by a distinguished citizen in describing the discovery of a Western ranchman while dealing with his herdsmen, contains a bit of philosophy, or a nugget of truth, which the plaintiff, no doubt, can appreciate more keenly today than she could in November, 1922.

But the plaintiff's cause of action is not based on contract, nor is she seeking to hold anything awarded to her in the contest. She is suing in tort to recover the amount of money obtained from her by the false and fraudulent representations of the defendant's agent. Her action is one for pure fraud and deceit. *Gladstone v. Swaim,* 187 N. C., 712. We do not think it is open to the defendant on the present record to say to the plaintiff : "My agent lured you into a gamble, therefore take your loss." *S. v. Smith,* 152 N. C., 798. The jury has found that the plaintiff did not participate in a gaming enterprise, but that she was induced to part with her money solely upon the false and fraudulent representations of the defendant's agent.

The plaintiff had a right, under the rules of the contest, to purchase any number of subscriptions, either with her own money or with money contributed by others. What she did was entirely legitimate, according to her allegation, and many bona fide subscriptions were secured or purchased by her. With these she is content. But the gravamen of her complaint is that the defendant's agent fraudulently induced her to put an additional $500 of her own money into the campaign, which she would not have done but for such false and fraudulent representations. The plaintiff limits her action to one for fraud or deceit. For this she has been allowed to recover and for nothing else.

The record presents no reversible error, hence the verdict and judgment will be upheld.

No error.