J. C. LAMM v. JUNE A. CRUMPLER, T. R. HUMPHREY and BROOKWOOD GARDEN APARTMENTS, INC.

(Filed 30 June, 1955.)

Actions § 3c: Contracts § 7—New agreement may not be enforced when it is executed solely to facilitate performance of agreement void as against public policy.

> Plaintiff and the individual defendant entered into a written agreement for the division of land sold at judicial sale, predicated upon suppression of bidding at the sale. This agreement was held void as contrary to public policy. Thereafter plaintiff instituted this action to recover on a subsequent parol agreement in regard to the lands, and the evidence plainly and clearly disclosed that the parol agreement was entered into solely for the purpose of simplifying performance of the void written agreement and grew immediately out of and was directly connected with the void contract. *Held:* Nonsuit was correctly entered in the second action for specific performance of the oral agreement or for damages for its breach, since a court of justice will not lend its aid to enforce an illegal contract, but will remit the parties to their own folly under the maxim, *ex colo malo non oritur actio.*

APPEAL by plaintiff from *Clifton L. Moore, J.,* September Term 1954 of ALAMANCE.

Civil action to have it adjudged that the individual defendants Crumpler and Humphrey hold title to certain lands as trustees for plaintiff; to require all defendants to convey title to these lands to

plaintiff, and in the event that they cannot convey title, that the plaintiff recover compensatory and punitive damages.

At the close of plaintiff's evidence, upon motion of the defendants, the court entered a judgment of nonsuit.

The plaintiff appealed, assigning error.

*Cooper, Long, Latham & Cooper for Plaintiff, Appellant.*

*Young, Young & Gordon and Allen & Allen and Clarence Ross for Defendants, Appellees.*

PARKER, J.　This case, with the same parties and the same complaint, has been heretofore before this Court. *Lamm v. Crumpler*, 240 N.C. 35, 81 S.E. 2d 138. In that appeal in affirming a judgment overruling a demurrer, we said: "The defendants may answer, and issues be drawn upon the pleadings and the factual situation may be fully developed upon the trial in Superior Court. Then the court may consider the case in the light of the evidence offered. And such consideration will not be foreclosed by decision now made on the demurrer."

This case is a sequel to the decision in *Lamm v. Crumpler*, 233 N.C. 717, 65 S.E. 2d 336. In that case the parties were the plaintiff here and the individual defendants here, and the action was to reform a written contract pertaining to land and for specific performance of contract as reformed for conveyance of land. The action was based upon a contract executed and delivered on 2 July 1949 by and between J. C. Lamm, party of the first part, plaintiff here, and June Crumpler, party of the second part, one of the defendants here. This Court said in that case in sustaining a demurrer to the complaint and in dismissing the appeal: "It clearly appears from the complaint that the withdrawal of the raised bid, plaintiff had placed on tract No. 34, was a consideration for the contract plaintiff now seeks to reform, and then to enforce. Manifestly, its purpose, reflected in the contract itself, was to stifle bidding on both tracts Nos. 34 and 35. Thus, the withdrawal of the amount required to raise the bid was fraudulent toward those interested in the property bringing a fair price through fair competition. (Citing authorities). This makes the transaction contrary to public policy, and void. Therefore, plaintiff has no right to be aided, and enforced."

The complaint, and the amendment thereto, here are set forth almost verbatim in *Lamm v. Crumpler*, 240 N.C. 35, 81 S.E. 2d 138, to which reference is hereby made. There is no need to repeat here what is there set forth.

This action had its genesis in the sale of Hornaday land on the edge of Burlington at public auction under order of court. At a resale on

22 June 1949 plaintiff became the high bidder for tract 35, and the defendants Crumpler and Humphrey the high bidders for tract 34.

Plaintiff's evidence tends to show the following facts: Between 9:00 and 10:00 p. m. on Saturday, 2 July 1949, plaintiff, his brother-in-law, and his lawyer, and the defendant Crumpler and his lawyer met in plaintiff's store in Burlington. Crumpler told plaintiff he was planning a housing project, and would need tract 34 and a part of tract 35, or the project would fail: that he had to let the FHA know immediately how much land he had. Plaintiff had made a tentative bid on tract 34. After further conversation plaintiff testified: The defendant Crumpler "finally proposed that I assign him my bid on Tract 35, that he put up the $16,800 necessary to purchase it, that he deed me a 150-foot strip from the west side of it for $1500, that he dedicate a 50-foot street through the tract just east of that, that he give me an option to buy 225 feet east of the proposed street at the same price per acre that the land had cost him, and that I withdraw a tentative bid that I had made on Tract 34. He further proposed that he would deed me back all the land that was not actually necessary in his housing development at the same price that he had to pay for it. I accepted this proposition . . . ."

Whereupon a written contract then and there was prepared and signed by and between plaintiff, party of the first part, and June Crumpler, one of the defendants, party of the second part. This contract was introduced in evidence. It is the identical contract set forth in full in *Lamm v. Crumpler*, 233 N.C. 717, 65 S.E. 2d 336, which this Court held void. There is no need to repeat here this written contract.

On 6 July 1949 the Court confirmed the bid of plaintiff on tract 35 and of the individual defendants on tract 34, as they were the last and highest bidders, and directed the Commissioners to execute and deliver deeds upon payment of the purchase price.

Plaintiff makes this allegation in Paragraph 6 of his Complaint: "That about said time"—referring to 6 July 1949—"the defendant Crumpler represented to the plaintiff that *they could simplify the performance of the agreement between them on July 2, 1949, as hereinbefore alleged,* and save the expense of additional conveyances, by agreeing upon a temporary division of Tract No. 35, and have the Commissioners and the plaintiff join in a deed to the remaining part of Tract No. 35 to the defendants Crumpler and Humphrey, subject to the terms of their agreement, and that, when the defendants Crumpler and Humphrey had procured approval of their housing development by the appropriate authorities, and had thereby ascertained exactly how much of the part of Tract No. 35 to which they were taking title

was required for the housing development, they would promptly re-convey the remainder to plaintiff."

Plaintiff's evidence tended to support the allegation from Paragraph 6 of his Complaint quoted above.

Pursuant to their oral agreement to simplify the performance of the written agreement between them of 2 July 1949, which this Court has held void, a deed was executed and delivered on 20 July 1949 by and between M. A. Coble, S. D. Ross and Clarence Ross as Commissioners of the Superior Court of Alamance County, and J. C. Lamm, parties of the first part, and J. A. Crumpler and T. R. Humphrey, parties of the second part. The deed states that the plaintiff Lamm directed the Commissioners to convey 8.28 acres of tract 35 to the individual defendants, and the plaintiff joined in the deed for that purpose. The deed conveyed 8.28 acres of tract No. 35 to the individual defendants, and tract No. 34.

In his Complaint plaintiff alleges that the Court Commissioners conveyed by deed 9.30 acres of tract No. 35 to his mother and himself.

Plaintiff's evidence tends to show that the individual defendants put into their housing project only 76/100 of an acre from tract No. 35 and all of tract No. 34, and sold and conveyed this land to the corporate defendant.

Plaintiff's evidence also tends to show that Crumpler told him several times that he would convey to plaintiff the 7.52 acres of tract No. 35 not used in the housing project, but finally said in November 1949 he had changed his mind. On 22 April 1952 the individual defendants conveyed the 7.52 acres of tract No. 35 to Irving Park, Inc., for $40,000.00.

Plaintiff testified that when the defendant Crumpler told him that he had not ascertained how much of tract No. 35 would be required for the housing development, and that he would reconvey to plaintiff the part of tract No. 35 to be conveyed to him, that would not be used in the housing project, he believed these statements, and executed the deed dated 20 July 1949.

Plaintiff's evidence further tends to show that several months prior to receiving the official application of the corporate defendant for an FHA loan on 8 August 1949, W. G. Jerome, Chief Underwriter for the FHA, went to Burlington. Jerome testified: "I advised Mr. Crumpler to buy Tracts 34 and 35, and I insisted on his buying No. 14, the old homeplace. I did not require Mr. Crumpler to purchase both Tract 34 and Tract 35. I thought it would be good business on his part to acquire that land and be good for the project for him to have it as it might be developed." In the official application the land proposed for use in the project was 19.26 acres: Tract No. 34 consisting of 18.50 acres and

76/100 of an acre of Tract No. 35. Jerome, a witness for plaintiff, further testified: "So far as I know, the FHA never instructed Mr. Crumpler that the Brookwood Gardens Housing Project would have to be abandoned unless he could obtain a substantial part of Tract 35. If such a requirement had been made, according to our regulations, I would have been the one to make it." The commitment for the FHA loan passed the Review Committee on 25 August 1949.

Plaintiff alleges in Paragraph 2 of his amendment to his Complaint: "Plaintiff states that the alleged agreement, by which the plaintiff is alleged to have assigned his bid on Tract No. 35 of the R. G. Hornaday property to the defendant June A. Crumpler, and by which the defendants June A. Crumpler and T. R. Humphrey are alleged to have agreed to reconvey to plaintiff all of Tract No. 35 not necessary for the housing development, was not wholly in writing."

Plaintiff's proof clearly and plainly shows that he and the individual defendants entered into an agreement we held void in *Lamm v. Crumpler*, 233 N.C. 717, 65 S.E. 2d 336, and that the subsequent oral agreement grew immediately out of, and is directly connected with, the void written agreement. Plaintiff's allegation and proof demonstrate that the purpose of the subsequent oral agreement was to simplify the performance of the void agreement of 2 July, 1949. The oral agreement cannot be separated from the void written agreement. It is true that plaintiff contends that he was induced by the actionable fraud of the individual defendants to enter into these agreements, but these agreements are the very basis of his action, for he is seeking to enforce these agreements by having the individual defendants adjudged to hold certain lands as trustees for him, and by having specific performance of the agreements to convey lands, and if specific performance cannot be had, to recover damages for breach of these agreements.

No principle of law is better settled than that a party to an illegal contract cannot come into a court of law, and ask to have his illegal objects carried out. The rationale of this principle is expressed in the maxim, *Ex dolo malo non oritur actio. Shoe Co. v. Department Store*, 212 N.C. 75, 193 S.E. 9; *Waggoner v. Publishing Co.*, 190 N.C. 829, 130 S.E. 609; 17 C.J.S., Contracts, Sec. 272. As *Stacy, C. J.* vividly said in *Hodges v. Hodges*, 227 N.C. 334, 42 S.E. 2d 82: "In all such cases, the parties are remitted to their own folly, and each is left, as best he can, to paddle his own canoe."

This Court in *Electrova Co. v. Ins. Co.*, 156 N.C. 232, 72 S.E. 306, 35 L.R.A. (NS) 1216, said: "The principle of law is thus stated by *Chief Justice Marshall*: 'Where a contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it. But if the promise be entirely discon-

nected with the illegal act, and is founded on a *new* consideration, it is not affected by the act, although it was known to the party to whom the promise was made, and although he was the contriver and con- ductor of the illegal act.'" The quoted words appear in Chief Justice Marshall's opinion for the Court in *Armstrong v. Toler,* 24 U.S. 258, 6 L. Ed. 468.

In *McMullen v. Hoffman,* 174 U.S. 639, 43 L. Ed. 1117, p. 1123, it is said: "The authorities from the earliest time to the present unani- mously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. Citing copi- ous cases in support."

In *Tator v. Valden,* 124 Conn. 96, 198 A. 169, 117 A.L.R. 1243, the Court said, quoting from *Vaszauskas v. Vaszauskas,* 115 Conn. 418, 423, 161 A. 856, 858: " 'It is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action courts will not enforce it, nor will they enforce any alleged right directly springing from such contract, but, if both parties are in *pari delicto,* the law will leave them where it finds them.' "

See also, to the same effect, 12 Am. Jur., Contracts, Sec. 152 and Sec. 210, where numerous cases are cited in the text and in the 1954 Cumulative Supplement. In 12 Am. Jur., Contracts, Sec. 152, it is said: "If a connection between the original illegal transaction and a new promise can be traced, no matter how many times and in how many different forms it may be renewed, it cannot form the basis of a re- covery."

If a contract is so connected with the illegal or immoral purpose or transaction as to be inseparable from it, a court will not enforce it. *Standard Furniture Co. v. Van Alstine,* 22 Wash. 670, 62 P. 145, 51 L.R.A. 889, 79 Am. St. Rep. 960.

"The rule supported by the weight of authority· is that courts will not aid in the division of the profits of an illegal transaction between associates . . . ." 17 C.J.S., Contracts, Sec. 277.

On the first appeal in this case, 240 N.C. 35, 81 S.E. 2d 138, we were concerned solely with the complaint and the amendment thereto. The only allegation as to the oral agreement is in the amendment to the complaint, and reads as follows: "The alleged agreement by which plaintiff is alleged to have assigned his bid on Tract No. 35 . . . to

the defendant June A. Crumpler, and by which the defendants June A. Crumpler and T. R. Humphrey are alleged to have agreed to reconvey to plaintiff all of Tract No. 35 not necessary for the housing development, was not wholly in writing." We now have the evidence before us, and the evidence plainly and clearly shows that the oral agreement is so interlocked with, and growing immediately out of the void and illegal written agreement of 2 July 1949, that a court of justice will not lend its aid to enforce it. The judgment of the lower court nonsuiting plaintiff's action is

Affirmed.