M. A. CAUBLE v. J. C. TREXLER. MORTGAGEE, AND A. R. TREXLER, ASSIGNEE AND OWNER OF NOTE AND MORTGAGE.

(Filed 9 April, 1947.)

**1. Contracts § 7—**

Agreements against public policy are illegal and void.

**2. Contracts § 7g—**

A statute on a subject within the province of the lawmaking power is public policy thereon, and an agreement which violates the provision of such statute or which cannot be performed without violating its provisions is illegal and void.

**3. Mortgages § 1b—**

Where a mortgagee agrees to the scaling down of his debt as required by the Land Bank Commissioner as a condition precedent to making a loan to the debtor with which to satisfy the indebtedness, a mortgage deed thereafter taken by the creditor to secure a note for difference between original indebtedness and the amount received in satisfaction thereof is void as against public policy. 12 USCA, 1016, *et seq.*

**4. Actions § 3c: Equity § 1—**

The rule that equity will not exercise jurisdiction when the parties are *in pari delicto* is the policy of the law in this State, but the rule is subject to limitations and exceptions, among which are that relief may be given when to do so will advance public policy and that when the parties are not equally blameworthy, relief may be given in furtherance of justice to prevent a party from benefiting from the fruits of his own wrong.

**5. Same: Mortgages § 1b—**

In an action attacking a mortgage executed at the insistence of the creditor to secure the difference between the original indebtedness and the amount loaned by the Federal Land Bank Commissioner to satisfy the original mortgage indebtedness, equity will not deny relief on the ground that the plaintiff was *in pari delicto*, but will act to prevent the mortgagee from collecting on the instrument.

**6. Quieting Title § 2—**

An action attacking a mortgage executed at the insistence of the creditor to secure the difference between the original indebtedness and the amount loaned by the Federal Land Bank Commissioner to satisfy the original mortgage indebtedness, plaintiff having been in actual possession of the land from the date of said mortgage, is not barred by the three year statute of limitations, G. S., 1-52 (9), since it is an action to remove cloud on title which is a continuing one to which the statute is not applicable.

APPEAL by plaintiff from *Clement, J.,* at November Term, 1946, of ROWAN.

Civil action instituted 24 December, 1945, for permanent injunction against foreclosure of mortgage deed and for cancellation thereof and to remove same as cloud upon title.

Plaintiff alleges in his complaint, and on the trial in Superior Court offered evidence tending to show in substance these facts:

1. He, the plaintiff, is seized in fee and in possession of a certain tract of land in Rowan County, North Carolina, on which on 29 July, 1931, he and his wife executed to defendant J. C. Trexler a certain mortgage deed as security for a note in the sum of $3,750.

2. In 1936 Cauble, at request of J. C. Trexler, applied to the Federal Land Bank of Columbia, South Carolina, for a loan with which to pay off the said indebtedness to said Trexler. Pursuant thereto upon appraisal of the farm of Cauble, the Land Bank proposed to lend him the sum of $2,600 (1) on the express condition that Trexler, as mortgagee and holder of Cauble's note, would accept same in full of the indebtedness represented by the note, and (2) upon the further condition that said Trexler would not demand or take or accept from Cauble and his wife any additional note or mortgage or obligation of any kind securing the balance due at time of the loan by the Land Bank to Cauble. And in order to induce the Land Bank to lend said amount to Cauble, Trexler signified his willingness to forego any and all amounts due him in excess of the Land Bank loan, and, in connection with the Cauble application for said loan, signed a statement and agreement of creditor (purported copy of which was attached to the complaint, as an exhibit), addressed "To the Federal Land Bank of Columbia, and/or The Land Bank Commissioner, and The Federal Farm Mortgage Corporation, and to the applicant(s) for a loan therefrom to pay the indebtedness herein described," reading in brief as follows: "The undersigned, the owner and holder of that certain note and deed of trust . . . dated 29 July, 1931, . . . executed and owing by M. A. Cauble and wife, Lillie Cauble to J. C. Trexler . . . evidencing and securing an indebtedness in the principal sum of $3750, bearing interest at six per centum per annum . . . upon which the present unpaid balance . . . is $3850, has agreed and

does hereby agree to accept in full settlement of said indebtedness the sum of $2,434.75. Upon receipt of said amount the undersigned will cancel and satisfy the instruments representing, evidencing and securing the said indebtedness, or, at the request of the Federal Land Bank of Columbia, will transfer said instruments to it. The cancelled and satisfied or assigned instruments will be forwarded to the person designated by The Federal Land Bank of Columbia, upon receipt of a check or draft for the amount the undersigned has agreed to accept. The undersigned has no understanding or agreement with the applicant(s) or anyone acting for him or them that the undersigned is to be paid an additional amount upon said indebtedness, directly or indirectly, in cash or otherwise, or that the undersigned will be given any security or evidence of indebtedness therefor; and the undersigned will not demand or accept payment or any evidence of indebtedness or security for the difference, or any part thereof, between the total amount of said indebtedness and the amount herein stated and agreed to be accepted in full settlement thereof. The indebtedness above described is the only indebtedness owed by the applicant(s) to the undersigned. This statement and agreement is made to assist the above named applicant(s) to obtain a loan(s)."

M. A. Cauble and his wife, as applicants, and in writing, acknowledged that the above statement is correct, and that they consent to the provisions thereof. (Here it may be noted that the date of the exhibit as shown in the record on the appeal "25th day of June, 1946," being manifestly erroneous, the original as introduced in evidence on trial below was certified by the Clerk of Superior Court of Rowan County, upon writ of *certiorari* issued *ex mero motu,* and it is seen that the correct date is the "25th day of June, 1936").

3. After the agreement with The Land Bank and with Cauble, and after the said loan had been consummated, J. C. Trexler demanded of Cauble a note for the difference between the amount due on the original note and the amount of the loan from the Land Bank, $2,434.75, and a second mortgage on the same land securing the same,—and "plaintiff, under the circumstances, not knowing what to do, executed a note and mortgage for $1,785.87."

4. Thereafter, during more than nine years demands by J. C. Trexler, and A. R. Trexler as assignee for payment of said note, last signed, were made upon Cauble, and he has consistently refused to pay anything on the principal or interest thereof, claiming at all times that the note and mortgage are null and void and uncollectible. And on 28 November, 1945, J. C. Trexler and A. R. Trexler, acting under the alleged second mortgage, so signed by Cauble, advertised the land for sale, on certain date at the courthouse door in Salisbury.

The plaintiff Cauble testified in detail as to circumstances under which he and his wife, after the Land Bank loan had been consummated and

the checks signed over by them to J. C. Trexler, had signed the note and second mortgage. When Trexler said he had to have a second mortgage, he, Cauble, protested—but, quoting him, "I got to where I couldn't talk any more. I sat down and I said 'Go ahead and make it $2,200 or $22,000.' I told him it wouldn't be worth a-cuss after he had signed up what he had with the Bank . . ." And then on cross-examination, this question was asked plaintiff: "I ask you if you don't know that you and Trexler talked this matter over and that it was thoroughly understood that you were to give a mortgage for the balance?", to which plaintiff answered: "I never knowed a thing about the second mortgage, and he never mentioned it until he got me in town at the last pinch. If he had mentioned second mortgage to me, I never would have done it."

Plaintiff further alleges in substance (1) that said note and mortgage deed are without consideration, illegal and unenforceable, and afford defendants no legal right or authority to proceed under the mortgage to advertise and sell at public auction plaintiff's lands, and that the unlawful and wrongful conduct of defendants in the purported advertisement and sale will work irreparable damage to plaintiff, for which there is no adequate remedy at law; and (2) that the note and the mortgage deed purporting to secure the note are a cloud upon plaintiff's title to the land to which it relates.

Thereupon plaintiff prays (1) that defendants be permanently restrained and enjoined from selling said land, under said mortgage deed, (2) that said mortgage deed be removed as a cloud upon plaintiff's title, (3) that said note and mortgage deed be canceled; and (4) that he have such further relief in the action as he may be entitled to in law and equity.

Defendant, answering the complaint, pleads (1) that plaintiff and his wife in signing the note and second mortgage acted voluntarily, and with knowledge of all the facts and circumstances existing at the time, and plaintiff, his wife now being dead, is estopped, and barred of right to maintain this action, (2) that plaintiff ratified the note and second mortgage by part payment of interest accrued on the note, and (3) that plaintiff's right to maintain this action is barred by the three year statute of limitations.

At the close of plaintiff's evidence, motion of defendants for judgment as of nonsuit was allowed. From judgment in accordance therewith, plaintiff appeals to Supreme Court and assigns error.

*Woodson & Woodson for plaintiff, appellant.*
*R. Lee Wright for defendants, appellees.*

WINBORNE, J. The evidence shown in the record on this appeal, considered in the light most favorable to plaintiff and under applicable

principles of law, is sufficient, in our opinion, to take the case to the jury. Hence, appellant's exception to the judgment from which this appeal comes to this Court is well founded, and is sustained.

It is a general rule of law that agreements against public policy are illegal and void. *Burbage v. Windley,* 108 N. C., 357, 12 S. E., 839, 12 L. R. A., 409; *Phosphate Co. v. Johnson,* 188 N. C., 419, 124 S. E., 859.

Agreements are against public policy when they tend clearly, among other things, to injure "the public confidence in the purity of the administration of the law." And where the law-making power speaks on a particular subject over which it has power to legislate, public policy in such cases is what the law enacts. 12 Am. Jur., pp. 662, 664, 668. Hence an agreement which violates a provision of a statute or which cannot be performed without a violation of such provision is illegal and void. *Phosphate Co. v. Johnson, supra.*

In connection with the subject of the case in hand, it is seen that the Emergency Farm Mortgage Act of 1933, 48 Stat. at Large, 48, 12 USCA, Subchapter II, Sections 1016, *et seq.,* pertaining to and authorizing loans to farmers by Land Bank Commissioner for "any of the purposes for which Federal Land Banks are authorized by law to make loans," to be secured by first or second mortgages upon farm property, real or personal, provides, among other things: That "the amount of the mortgage given by any farmer, together with all prior mortgages, or other evidence of indebtedness secured by such farm property of the farmer, shall not exceed 75 per cent of the normal value thereof, as determined upon an appraisal made pursuant to the preceding subchapter, as amended"; and that "no loan shall be made . . . unless the holder of any prior mortgage or instrument of indebtedness secured by such farm property arranges to the satisfaction of the Land Bank Commissioner to limit his right to proceed against the farmer and such farm property for default in payment of principal."

The purpose of the statute becomes a public policy. The primary object of the statute is relief to farmers from the load of oppressive debts, and any benefit to the creditors of the farmer is merely incidental. Compare Annotation 125 A. L. R., 809. Hence, if Land Bank Commissioner as condition precedent to making loan to debtor with which to pay existing indebtedness, required the creditor to agree to a scaling down of debt, on terms set forth in purported statement and agreement of creditor introduced in evidence, mortgage deed taken thereafter by creditor to secure a note for difference between original indebtedness and the amount received in satisfaction thereof, would be void as against public policy.

While this particular subject does not seem to have been treated heretofore by this Court, the courts of other jurisdictions have dealt with it

in well considered opinions, and have held almost uniformly, that notes and mortgages, given by a former debtor to his creditor to make up and secure the difference between the amount paid under a scaledown settlement pursuant to the Emergency Farm Mortgage Act of 1933, *supra,* and the amount originally owed, are contrary to public policy and void. See *Federal Land Bank of Columbia v. Blackshear Bank,* 182 Ga., 657, 186 S. E., 724; *Jones v. McFarland,* 178 Miss., 282, 173 So., 296; *Federal Land Bank v. Koslofsky,* 67 N. D., 322, 271 N. W., 907; *Kniefel v. Keller,* 207 Minn., 109, 290 N. W., 218; *Oregon & Western Colonization Co. v. Johnson,* 164 Ore., 517, 102 P. (2d), 928; *Robinson v. Reynolds,* 194 Ga., 324, 21 S. E. (2d), 214. See analogous cases as to such transactions under the Home Owners Loan Act of 1933, 12 USCA, Section 1461, *et seq.,* Annotations 110 A. L. R., 250, 121 A. L. R., 119, 125 A. L. R., 809.

In *Robinson v. Reynolds, supra,* the Supreme Court of Georgia, in an opinion by *Jenkins, J.,* appropriately sums up the principle as applied in above cases in this way: "The beneficent purpose of loans made by Federal agencies under and pursuant to the Emergency Farm Mortgage Act of 1933 . . . was to enable persons in debt and without ability to make payment to constitute such agencies the sole creditors, thereby eliminating by way of compromise all other creditors. Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent cannot be made the ground of a successful suit. . . . Accordingly, a new obligation assumed by a debtor to a lien creditor, in violation of the expressed terms of the creditor's acceptance, as in full payment of an amount less than his debt, from a Federal agency, making a loan to the debtor, under the farm mortgage act, of an amount insufficient to pay lien indebtedness, is void as against public policy."

However, defendants contend that plaintiff stands *in pari delicto* with them in relation to the execution of the note and second mortgage, and, hence, may not invoke the aid of equity,—that the courts will leave the parties where they found them, and will not lend aid to either of them,— citing *Waggoner v. Publishing Co.,* 190 N. C., 829, 130 S. E., 609; and *Merrell v. Stuart,* 220 N. C., 326, 17 S. E. (2d), 458. The rule there stated is the policy of the law in this State, but it has its limitations and exceptions, and is not necessarily controlling here. See 3 Pomeroy Equity Jurisprudence, 5th Ed., Sections 940, 941, and 942. *Basket v. Moss,* 115 N. C., 448, 20 S. E., 733; *Herring v. Lumber Co.,* 159 N. C., 382, 74 S. E., 1011; *Courtney v. Parker,* 173 N. C., 479, 92 S. E., 324; *Hodges v. Hodges,* opinion handed down this day, *post,* 334.

In this connection we quote from Pomeroy, *supra,* "The rule has sometimes been laid down as though it were equally universal, that where the parties are *in pari delicto,* no affirmative relief of any kind

will be given to one against the other. This doctrine, though true in the main, is subject to limitations and exceptions." Sec. 940. "Even where the contracting parties are *in pari delicto,* the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this principle, and in compliance with the demands of a high public policy, equity may aid a party equally guilty with his opponent, not only by canceling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance or transfer, and decreeing the recovery back of money paid or property delivered in performance of the agreement." Sec. 941. "Lastly, when the contract is illegal, so that the parties are to some extent involved in the illegality,—in some degree affected with the unlawful taint,—but are not *in pari delicto,*—that is, both have not, with the same knowledge, willingness, and wrongful intent engaged in the transaction, or the undertakings of each are not equally blameworthy,—a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by canceling an executory contract, by setting aside an executed contract, conveyance or transfer . . . by means of an appropriate action not directly based upon the contract." Sec. 942.

Applying these principles, this Court in *Basket v. Moss, supra,* pertinently states that Pomeroy "calls attention to the fact that the rule *in pari delicto* is often misunderstood, and its application is properly and correctly that in such cases *'Potior est conditio possidentis'*—that is, that the Court will permit nothing to be done which will enable a party to collect from the other the fruits of his wrong. When he sues to recover, the law will not give him judgment. When he has shrewdly attempted to evade this by taking a mortgage with a power of sale, the court will, by injunction, prevent his collecting on a mortgage denounced as void by reasons of public policy."

In the light of these principles applied to the evidence offered in the trial below, it does not necessarily follow that the plaintiff is *in pari delicto* with defendants in relation to the transaction in question. But even if he be *in pari delicto* with defendants in respect thereto, we are of opinion that if the facts be as plaintiff's evidence tends to show, a court of equity will by injunction prevent defendants from collecting on the mortgage so taken.

Defendants also plead and contend that any cause of action which plaintiff may have rests on the ground of fraud, and that same is barred by the three years statute of limitations. G. S., 1-52 (9). Since plaintiff seeks to remove the second mortgage deed as a cloud upon his title to land, and since the evidence is susceptible of the inference that plain-

tiff has been in actual possession of the land from the date of the said mortgage deed, the statute of limitations so pleaded is inapplicable. The prevailing rule in such case is that the right to maintain an action to remove a cloud from a title is a continuing one to which the statute of limitations is not applicable. 44 Am. Jur., 47—Quieting Title, Sec. 63; 51 C. J., 199—Quieting Title, Sec. 126; Annotations 29 L. R. A. (N.S.), 390, to case of *Cooper v. Rhea,* 82 Kan., 109, 107 P., 799. See also *Cauley v. Sutton,* 150 N. C., 327, 64 S. E., 3, and *Sears v. Braswell,* 197 N. C., 515, 149 S. E., 846.

The demurrer *ore tenus* entered in this Court is overruled. The allegations of the complaint, liberally construed, are sufficient to state a cause of action.

The judgment as of nonsuit entered below is
Reversed.