IN THE MATTER OF EXPERIENCE MODIFICATION AUTOMOBILE LIABILITY INSURANCE,
BLUE BIRD TAXI COMPANY OF ASHEVILLE, INC.

(Filed 18 March, 1953.)

**1. Insurance § 3—**

Since G.S. 58-246 (b) provides that the N. C. Automobile Rate Administrative Office may encourage safety in the operation of taxicabs by offering reduced premium rates upon approval of the Commissioner of Insurance, the statute does not authorize, to accomplish this purpose, the imposition of increased premium rates on companies having a higher loss experience than the average.

**2. Statutes § 5a—**

Where a statute expressly provides one method for accomplishing a stated objective, it necessarily excludes other methods for accomplishing such objective under the maxim *expressio unius est exclusio alterius*.

APPEAL by petitioner Blue Bird Taxi Company of Asheville, Inc., from *Carr, J.*, at June Term, 1952, of WAKE.

Proceeding by owner of taxicabs attacking as excessive certain premium rates for liability insurance established by an experience rating plan promulgated by the North Carolina Automobile Rate Administrative Office and approved by the Commissioner of Insurance.

The proceeding arises out of the statutes, the regulations, the ordinance, and the facts stated in the numbered paragraphs set forth below.

1. Every insurance company engaged in writing automobile bodily injury and property damage insurance in North Carolina is required to maintain membership in the North Carolina Automobile Rate Administrative office, a rating bureau, which is placed under the supervision of the Commissioner of Insurance and regulated by the statutes embodied in Article 25 of Chapter 58 of Volume 2B of the General Statutes.

2. Under G.S. 58-246 (a), the North Carolina Automobile Rate Administrative Office has authority "to maintain rules and regulations and fix rates for automobile bodily injury and property damage insurance and equitably adjust the same as far as practicable in accordance with the hazard of the different classes of risks as established by said bureau." It is empowered, moreover, by G.S. 58-246 (b) "to encourage safety on the highways and streets of the State, by offering reduced premium rates under a uniform system of experience rating as may be approved by the Commissioner of Insurance."

3. Under G.S. 58-248, rates fixed by the North Carolina Automobile Rate Administrative Office for automobile bodily injury and property damage insurance are submitted to the Commissioner of Insurance, who must approve them before they can be put into effect in this State. G.S. 58-248.1 provides that "Whenever the Commissioner, upon his own mo-

tion or upon petition of any aggrieved party, shall determine, after notice and a hearing, that the rates charged or filed on any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory, or otherwise not in the public interest, or that a classification or classification assignment is unwarranted, unreasonable, improper or unfairly discriminatory, he shall issue an order to the bureau directing that such rates, classifications or classification assignments be altered or revised in the manner and to the extent stated in such order to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest."

4. The establishment of rates on bodily injury and property damage insurance for taxicabs operating in the State is governed by Article 25 of Chapter 58 of Volume 2B of the General Statutes. See: G.S. 58-246 (d).

5. The North Carolina Automobile Rate Administrative Office has done these things with the approval of the Commissioner of Insurance for each premium-paying period during recent years: (1) It has placed in a special classification those owners of taxicabs who have paid total premiums of not less than $400 "during the latest year or latest two years of the experience period" defined in accompanying regulations and who have maintained at least five insured taxicabs in service "during the latest year of the experience period" defined in such regulation; (2) it has made the premiums payable by owners of taxicabs included in the special classification for bodily injury and property damage insurance determinable by the provisions of an experience rating plan; and (3) it has made the premiums payable by all other owners of taxicabs for bodily injury and property damage insurance determinable by basic or manual rates. The basic or manual rates are based on the average hazard, as shown by experience, attending the operation of taxicabs in the aggregate. The experience rating plan classifies risks by determining for each owner of taxicabs, who is included in the plan, an insurance rate which recognizes his measurable departure from the average hazard attending the operation of taxicabs in the aggregate. Under the experience rating plan, the worse than average risk is charged a premium measured by an individual experience rate higher than the basic or manual rate, and the better than average risk is charged a premium measured by an individual experience rate lower than the basic or manual rate. The individual experience rates of the owners of taxicabs included in the experience rating plan are based on the actual experience of such owners as to losses during a prescribed experience period. The question arising on this appeal does not necessitate any explanation of the somewhat complicated method employed in computing individual experience rates under the experience rating plan.

6. An ordinance of the City of Asheville, which was in force at the times herein set out, requires every person operating taxicabs for hire within the corporate limits of Asheville to deposit with the City of Asheville in respect to each taxicab so operated by him a policy of liability insurance or a surety bond or a sum of money sufficient to secure the payment of damages for any liability incurred by him on account of bodily injuries resulting from his operation of such taxicab in these amounts: $2,500 for bodily injury to one person, and $5,000 for bodily injuries to two or more persons in any single accident.

7. Persons operating taxicabs for hire within the corporate limits of Asheville customarily satisfy the requirements of the ordinance by carrying liability insurance.

8. The petitioner Blue Bird Taxi Company of Asheville, Inc., has owned and operated approximately 30 taxicabs for hire within the corporate limits of Asheville during recent years and has been included in the special classification described in paragraph 5 during such times. For this reason, the premiums on its bodily injury insurance have been computed on the basis of its individual experience rates in accordance with the experience rating plan. Some of the competitors of the petitioner in the taxicab business at Asheville have owned and operated fewer than five taxicabs and consequently have had the premiums on their bodily injury insurance measured by the basic or manual rates.

9. Inasmuch as the petitioner proved itself to be a worse than average risk during the relevant experience period, the premiums on each taxicab owned by the petitioner under the experience rating plan for bodily injury insurance satisfying the requirements of the ordinance of the City of Asheville for the annual period beginning 1 March, 1951, was 52 per cent higher than that on each taxicab operated by the competitors of the petitioner, whose premiums were measured by the basic or manual rates.

10. Upon ascertaining the fact stated in the preceding paragraph, the petitioner initiated this proceeding by filing with the Commissioner of Insurance a petition, wherein it alleged, in essence, that the rates charged it under the experience rating plan for the annual period beginning 1 March, 1951, are actually and legally excessive, and wherein it prayed that the Commissioner of Insurance grant it appropriate relief against such rates under the provisions of G.S. 58-248.1. The Commissioner of Insurance heard the proceeding after notice to the North Carolina Automobile Rate Administrative Office, found facts accordant with those stated above, concluded as a matter of law thereon that the rates charged the petitioner under the experience rating plan are neither actually nor legally excessive, and made a decision denying the petitioner the relief sought by it.

11. The petitioner appealed to the Superior Court under the provisions of G.S. 58-9.3 and G.S. 58-248.5. Judge Carr reviewed the decision of the Commissioner of Insurance at the June Term, 1952, of the Superior Court of Wake County, and rendered a judgment affirming it. The petitioner thereupon appealed to the Supreme Court, assigning the entry of this judgment as error.

*John C. Cheesborough for the petitioner, appellant.*

*Attorney-General McMullan and Assistant Attorney-General Bruton for Waldo C. Cheek, Commissioner of Insurance, appellee.*

*Joyner & Howison for the North Carolina Automobile Rate Administrative Office, appellee.*

Ervin, J. Counsel for the appellees argue that the experience rating plan is just in that it imposes on each included taxicab owner as far as practicable his fair share of the cost of liability insurance. They assert also that the experience rating plan is wise in that it affords a twofold encouragement to safety on the highways by offering reduced premiums to included taxicab owners who are better than average risks and by exacting increased premiums from included taxicab owners who are worse than average risks. They insist, moreover, that the differences in the premium charges for liability insurance are based on reliable evidence as to losses, and that in consequence there is no discrimination among the individual taxicab owners covered by the experience rating plan or between such taxicab owners as a group and other taxicab owners.

We are impressed in no small degree by the apparent validity of these arguments. We are nevertheless constrained to hold that the North Carolina Rate Administrative Office and the Commissioner of Insurance exceeded the powers conferred upon them by Article 25 of Chapter 58 of Volume 2B of the General Statutes in promulgating and approving the experience rating plan which imposes a premium on each taxicab owned by the petitioner for bodily injury insurance satisfying the requirements of the ordinance of the City of Asheville for the annual period beginning 1 March, 1951, 52 per cent higher than that charged on each taxicab operated by the competitors of the petitioner, whose premiums are measured by the basic or manual rates.

These statutory provisions fall within the purview of the familiar and sound rule of statutory construction embodied in the terse maxim *expressio unius est exclusio alterius,* meaning the expression of one thing is the exclusion of another. When the Legislature granted authority to the North Carolina Automobile Rate Administrative Office and the Commissioner of Insurance "to encourage safety on the highway . . . *by offering reduced premium rates* under a uniform system of experience rating," it

impliedly prohibited them from doing that thing in any other way. *Howell v. Indemnity Co., ante,* 227, 74 S.E. 2d 610; *In re Sale of Land of Sharpe,* 230 N.C. 412, 53 S.E. 2d 302; *Old Fort v. Harmon,* 219 N.C. 241, 13 S.E. 2d 423; *Botany Worsted Mills v. United States,* 278 U.S. 282, 49 S. Ct. 129, 73 L. Ed. 379; *Raleigh & G. R. Co. v. Reid,* 13 Wall. 269, 20 L. Ed. 570; *Stephens v. Smith,* 10 Wall. 321, 19 L. Ed. 933; 50 Am. Jur., Statutes, section 244; 59 C.J., Statutes, section 582. This being true, the North Carolina Automobile Rate Administrative Office and the Commissioner of Insurance passed beyond their statutory authority when they sanctioned an experience rating plan which undertakes to encourage safety on the highways *by imposing increased premium rates.*

For this reason, the premium rates challenged by the petitioner are legally excessive, and the judgment holding that he is not entitled to appropriate relief against them is

Reversed.