FRANKLIN LEWIS ROBUCK v. JENNIE G. ROBUCK

No. 7328DC780

(Filed 9 January 1974)

**Divorce and Alimony §§ 14, 16— property settlement — effect on defense of adultery and claim for alimony**

A property settlement agreement signed by the parties did not bar the wife from asserting the defense of adultery to the husband's action for divorce and did not by virtue of G.S. 50-16.6(b) bar the wife's cross-action for alimony.

APPEAL by defendant from *Allen, Judge,* 8 March 1973 Session of District Court held in BUNCOMBE County.

On 11 September 1972, plaintiff brought an action against defendant for absolute divorce on the grounds they had lived separate and apart since 1 August 1970.

On 11 November 1972, defendant filed her responsive pleadings. By way of defense to the action for divorce, defendant answered and alleged that plaintiff and defendant had lived together until 11 January 1971, when plaintiff maliciously turned her out of their home; that plaintiff had offered such indignities to her person as to render her condition intolerable and life burdensome; that plaintiff before and after turning defendant out of the home had committed adultery and that he was the father of an illegitimate child born to his alleged companion in adultery. As a cross action against plaintiff, defendant sought an award for support and maintenance and counsel fees and pleaded the above in support of her claim.

On 12 December 1972 plaintiff moved for summary judgment against defendant on her cross action. The motion came on for hearing on 8 March 1973. The motion was considered on the evidence consisting of an agreement that parties had signed on 1 March 1971 and defendant's affidavit. The agreement is as follows:

"THIS AGREEMENT, Made and entered into this 1st day of March, 1971, by and between JENNIE G. ROBUCK, hereinafter referred to as Party of the First Part, and F. L. ROBUCK, hereinafter referred to as Party of the Second Part;

## WITNESSETH:

WHEREAS, the parties hereto are husband and wife and have encountered serious marital difficulties by reason of which the Party of the First Part is contemplating the filing an Original Complaint for Divorce against the Party of the Second Part; and,

WHEREAS, the parties hereto are desirous of amicably settling their respective property rights and have entered into various agreements relating to same, which said agreements the parties desire to and by these presents do hereby express in writing.

NOW, THEREFORE, in consideration of the premises, the mutual advantages accruing from the execution of this Agreement, the promises and covenants contained herein and for other good and valuable considerations, the adequacy of which and the receipt of which is expressly acknowledged by each of the parties hereto, the parties agree as follows:

1. The Party of the First Part is to receive the sum of One Hundred Thousand Dollars ($100,000.00) cash by no later than two (2) years from the date of the execution of this Agreement, such sum, as aforementioned, to be paid from the sale of lots which were accumulated by the parties during the tenure of their marriage and which were accumulated partly through the efforts and labors of the Party of the First Part. The said sum of One Hundred Thousand Dollars ($100,000.00) is to be paid in the manner and form consistent with the terms and provisions of that certain Deed of Trust executed by the parties, a

copy of which is attached hereto, marked Exhibit A, incorporated herein by reference and made a part hereof. It is further expressly agreed between the parties that the aforesaid sum of One Hundred Thousand Dollars ($100,-000.00) is not and shall not be construed to be payments of alimony but instead is expressly recognized and admitted by the parties to be the share of the Party of the First Part in an equitable distribution of the properties accumulated by the parties during the tenure of their marriage.

2. The Party of the Second Part shall pay to the Party of the First Part as alimony the sum of One Hundred Twenty-Five Dollars ($125.00) per week, which said payments shall begin immediately following the execution of this Agreement and shall further continue for a period of one (1) full year following the payment in full of the sum of One Hundred Thousand Dollars ($100,000.00) as aforementioned.

3. The Party of the First Part shall receive a fee simple, fully, finally and forever, in and to the real property located at 4 Pinehurst Circle, Arden, North Carolina, and the Party of the Second Part agrees to execute any and all instruments as may be required to vest in the Party of the First Part a fee simple, fully, finally and forever, in and to said property. The Party of the First Part shall make the mortgage payments on the aforesaid real property promptly as same become due.

4. The Party of the First Part shall receive as and for her own, sole and separate use the trailer which is located at Skyland, North Carolina, and which is presently being used to house the fabric business of the Party of the First Part, which said business is known as Quality Interiors. The Party of the Second Part shall discharge and pay in full the indebtedness on said trailer.

5. The Party of the First Part is to receive as and for her own, sole and separate use that certain 1971 225 Buick Electra automobile, and the Party of the Second Part shall pay and discharge in full any and all indebtedness on said automobile. The Party of the Second Part further shall do any and all things necessary to convey to the Party of the First Part a certificate of title to said automobile free and clear of any and all liens and/or encumbrances of any and all kinds.

6. The Party of the Second Part shall be required to pay those premiums on a medical and hospital insurance policy to be acquired by the Party of the First Part whose benefits shall not be less than those benefits afforded by Blue Cross, Blue Shield and major medical.

7. The Party of the First Part for and during that period of time until the aforesaid sum of One Hundred Thousand Dollars ($100,000.00) shall have been paid in full shall continue to have the unrestricted use of the following credit cards charges against which made by the Party of the First Part shall be paid by the Party of the Second Part, and the Party of the Second Part, during said period as aforementioned, shall not cause in any way any of the aforesaid credit cards to be cancelled:

    (a)  Telephone credit card number
          884-53-80-1870

    (b)  Gulf credit card
          Land, Sea and Air

    (c)  Bankamericard

    (d)  Humble Travel Club card

    (e)  Shell credit card

    (f)  Master Charge

    (g)  Mobil credit card

    (h)  Avis Rent-a-Car

    (i)  Phillips 66

    (j)  Esso

As pertains to charges which may be made by the Party of the First Part against any and all of the aforesaid cards, the Party of the First Part agrees not to make unreasonable charges.

8. The Party of the First Part agrees upon the payment in full to her of the sum of One Hundred Thousand Dollars ($100,000.00) as aforementioned to deliver to the Party of the Second Part, without the necessity of any demand, all of the aforementioned credit cards and to make

no further charges under same which would be the obligation of the Party of the Second Part to pay.

9. The Party of the First Part admits and agrees that following the payments in full to her of the sum of One Hundred Thousand Dollars ($100,000.00) as aforementioned and the performance of the covenants and promises contained herein by the Party of the Second Part that she will have no further interest in the businesses or properties owned by the Party of the Second Part directly or indirectly.

10. This Agreement constitutes the entire understanding and agreement between the parties and may be modified only by writing executed by the parties subject, however, to the approval of any Court of competent jurisdiction in which the Party of the First Part should cause her Complaint for Divorce to be filed.

IN WITNESS WHEREOF, the parties have hereunto set their hands the day and year first above written."

Defendant's affidavit, in summary, tends to show the following: The parties had placed their real estate in a corporation owned by her husband. She would sign any paper her husband requested her to sign because she trusted him. After plaintiff became involved with the other woman, defendant discovered that large sums of money had been withdrawn from the business. Counsel advised her the only way she could stop the money from going out was to seek a divorce. She advised counsel that she did not want a divorce. Counsel later recommended that she make a "quiet property settlement." She did not know her husband's net worth at the time the papers were signed, and the settlement was not based thereon. The Court made findings of fact including the following:

"3. That Plaintiff and Defendant separated from each other on March 1, 1971, and have since remained separate and apart, and have been so separated for more than one year;

4. That on March 1, 1971, the Plaintiff and Defendant entered into a valid Alimony and Property Settlement Agreement in contemplation of divorce, in Memphis, Tennessee;

5. That pursuant to the provisions of said Alimony and Property Settlement Agreement, the Plaintiff conveyed to the Defendant certain real estate; paid her $100,000.00; paid for and conveyed to the Defendant a Buick automobile; granted to the Defendant the use of certain credit cards and complied with the provisions of said Alimony and Property Settlement Agreement;

6. That pursuant to said Alimony and Property Settlement Agreement, the Defendant accepted the benefits from said Alimony and Property Settlement Agreement; . . . "
Based on these findings the Court concluded:

"1. That the Defendant is now barred from recovery of Alimony by virtue of the provisions of General Statutes 50-16.6 (b).

2. The Defendant is now barred for asserting the defense of adultery."

The Court then allowed plaintiff's motion for summary judgment in favor of plaintiff on defendant's claim for alimony and ordered that defendant's defense of adultery be stricken from her responsive pleadings.

Defendant appealed.

*Robert S. Swain for plaintiff appellee.*

*Boyce, Mitchell, Burns & Smith by Robert Smith for defendant appellant.*

VAUGHN, Judge.

We see nothing in the agreement of the parties signed 1 March 1971 which, as a matter of law, bars defendant's right to defend the action brought against her and to assert her cross action. G.S. 50-16.6 (b), on which the Court relied, provides: "(b) Alimony, alimony pendente lite, and counsel fees may be barred by an *express provision* of a valid *separation agreement* so long as the agreement is performed." (Emphasis added.) The agreement in question contains no such provision, express or implied. Moreover, on its face, it does not appear to be a "separation agreement" for there is no agreement to separate or to live separately and apart. The recital that party of the first part is contemplating the filing of a complaint for divorce does not specify the grounds. Indeed, the basis for the contem-

plated divorce action may well have been the very grounds she now seeks to assert by way of her defense and cross action. Defendant agreed to accept alimony for the time stated but did not agree to relinquish her right to additional alimony or any other right arising out of the marriage except "she will have no further interest in the businesses or properties owned by the Party of the Second Part." The agreement appears to be a property settlement and not a separation agreement which, under appropriate circumstances, might be used as a defense against the matters raised in defendant's responsive pleading.

Reversed.

Judges CAMPBELL and HEDRICK concur.