BARBARA E. WILLIAMS, Plaintiff v. BENNIE S. WILLIAMS, Defendant

No. 9419DC320

(Filed 21 November 1995)

**1. Divorce and Separation § 3 (NCI4th)— agreement made on verge of resuming marital relations—no separation agreement**

The trial court did not err in determining that the parties' agreement was not a separation agreement under N.C.G.S. § 52-10.1 where the express and unambiguous language of the agreement declared that the parties were not contemplating living separate and apart forever when they executed the document, but rather were on the verge of resuming marital relations; plaintiff's verified allegation that the agreement was a "Post Nuptial Agreement" was admitted by defendant, and plaintiff could not later assert a contrary contention; and the resumption of marital relations would void executory provisions of the separation agreement, in this case, provisions for future alimony payments.

**Am Jur 2d, Divorce and Separation §§ 819 et seq.**

**2. Divorce and Separation § 35 (NCI4th)— no integration or non-integration language in agreement—no integrated property settlement**

The parties' agreement was not an integrated property settlement wherein the executory provision would withstand reconciliation of the signatories where the agreement lacked unequivocal integration or non-integration language and contained ambiguities and inconsistencies.

**Am Jur 2d, Divorce and Separation §§ 852 et seq.**

**3. Divorce and Separation § 14 (NCI4th)— promise to pay alimony upon future separation—agreement void as against public policy**

The trial court did not err in concluding that one paragraph of the parties' agreement was void as against public policy since that paragraph comprised a promise looking toward a future separation in stating that "should parties hereinafter again separate, [defendant] shall continue to pay permanent alimony of Five Hundred Dollars ($500.00) per month . . . ," and such proviso would serve to discourage plaintiff from putting forth a concerted

effort to maintain the marriage because of the knowledge she would continue to receive alimony regardless of whether the parties separated following reconciliation.

**Am Jur 2d, Divorce and Separation § 822.**

Judge GREENE dissenting.

Appeal by plaintiff from judgment filed 3 January 1994 by Judge Frank M. Montgomery in Rowan County District Court. Heard in the Court of Appeals 27 October 1994.

*Wallace & Whitley, by Robert L. Inge, for plaintiff-appellant.*

*Carlyle Sherrill for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals the trial court's judgment dismissing her complaint. She contends the court erred by: (1) finding a written agreement between the parties to be a marital contract as opposed to a separation agreement; and (2) concluding the contract was void as against public policy. We find plaintiff's arguments unpersuasive.

Pertinent facts and procedural information are as follows: Barbara E. Williams (plaintiff) and Bennie S. Williams (defendant) married 6 September 1959 and separated 30 May 1985. On 18 April 1988, the parties entered into an agreement (the Agreement) which recited that they were "considering the resumption of cohabitation," and required defendant to pay plaintiff $500.00 per month throughout the course of their marriage, the payments to continue "should [the] parties hereinafter again separate." Plaintiff and defendant separated anew in August 1993.

Plaintiff filed the instant action seeking specific performance of the Agreement and payment of $1,700.00 in alimony arrearage. Defendant answered admitting execution of the Agreement, but asserting it was void as a matter of public policy. He further moved that plaintiff's complaint be dismissed.

Defendant's motion was heard 16 December 1993 before the Honorable Frank M. Montgomery who entered judgment in pertinent part as follows:

2. That the basis of the Plaintiff's Complaint was Section Eight (8) of the Separation Agreement which reads as follows:

*8. Husband and Wife agree that Husband shall continue to make a payment of Five Hundred Dollars ($500.00) per month to Wife for her suport [sic] and maintenance. Both parties acknowledge that should parties hereinafter again separate, Husband shall continue to pay permanent alimony of Five Hundred Dollars ($500.00) per month pursuant to prior Agreement of parties; that he will be collaterally estopped from pleading the resumption of marital relationship as a bar to his continued paying this sum; he acknowledges that the resumption of marital relationship shall have no effect on the payment of this amount as his obligation to pay said amount was and remains an intrical part of this property settlement and for that reason not modifiable and not affected by the resumption.*
[emphasis added]

. . . .

· 6. That the contract between the parties is not a "premarital agreement" as defined by North Carolina General Statute 52B-2(1) because it is not an agreement "between prospective spouses made in contemplation of marriage and to be effective upon marriage" in that the parties hereto were married at the time of the making of this agreement.

7. That the agreement between the parties was not a separation agreement pursuant to North Carolina General Statute 52-10.1, because it was not executed in anticipation of a separation, but, in fact was occasioned by a resumption of the marital relationship between the parties; and further that its provisions, including specifically the provisions of Paragraph Eight (8), were to apply during the marital relationship as well as should there be a later separation of the parties.

8. That the agreement between the parties is a contract between husband and wife pursuant to North Carolina General Statute Section 52-10.

Based on these findings, the court concluded:

8. That Paragraph Eight (8) of the agreement between Plaintiff and Defendant violates public policy . . . and is, therefore, void.

The court concluded by ordering plaintiff's complaint dismissed, and plaintiff gave notice of appeal to this Court 10 January 1994.

**[1]** Plaintiff contends the trial court erred by finding the Agreement not to be a separation agreement under N.C. Gen. Stat. § 52-10.1 (1991), but rather a marital contract as provided in N.C. Gen. Stat. § 52-10 (1991) which by its terms was void as against public policy. We disagree.

N.C.Gen. Stat. § 52-10(a) (1991) provides:

Contracts between husband and wife not inconsistent with public policy are valid, and any . . . married persons may, with or without a valuable consideration, release and quitclaim such rights which they . . . may have acquired by marriage in the property of each other . . . . No contract . . . between husband and wife during their coverture shall be valid . . . for a longer time than three years . . . unless it is in writing and is acknowledged by both parties before a certifying officer.

G.S. § 52-10.1 states in pertinent part:

Any married couple is hereby authorized to execute a separation agreement not inconsistent with public policy which shall be legal, valid and binding in all respects . . . .

A "separation agreement" is defined as " 'a contract between spouses providing for marital support rights and . . . executed while the parties are separated or are planning to separate immediately.' " *Small v. Small*, 93 N.C. App. 614, 620, 379 S.E.2d 273, 277, *disc. review denied*, 325 N.C. 273, 384 S.E.2d 519 (1989) (citation omitted). "[T]he heart of a separation agreement is the parties' intention and agreement to live separate and apart forever . . . ." *In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E.2d 541, 545 (1976) (citation omitted).

The statutory sections set out above are distinguishable in that a separation agreement may affect support rights whereas G.S. § 52-10 refers only to "rights . . . in property"; further, as indicated by the terms requiring formalities for contracts entered into "during coverture," a contract under G.S. § 52-10 may be entered into at any time during marriage, not only in contemplation of separation or divorce. *See Edwards v. Edwards*, 102 N.C. App. 706, 708, 403 S.E.2d 530, 531, *disc. review denied*, 329 N.C. 787, 408 S.E.2d 518 (1991) (under G.S. § 52-10.1, "parties to a divorce may enter into [an] agreement to settle the question of alimony . . ."), and *Eubanks v. Eubanks*, 273 N.C. 189, 195, 159 S.E.2d 562, 567 (1968) (G.S. § 52-10, " 'relates to the release of an interest in property, *but has no bearing whatsoever on*

*the right of a wife to support'* " (citation omitted)). *See also Howell v. Landry*, 96 N.C. App. 516, 530, 386 S.E.2d 610, 618 (1989), *disc. review denied*, 326 N.C. 482, 392 S.E.2d 90 (1990) (although G.S. § 52-10 requires acknowledgment of contracts between spouses entered into "during coverture, the period of marriage, it does not require acknowledgment for premarital agreements.")

The document at issue herein recites that on the date of execution, the parties were "living separate and apart." However, it further provides that "the parties may desire to resume cohabitation as Husband and Wife in an effort to reconcile their differences," and that "[o]n the date of the signing of [the] agreement, the parties are considering the resumption of cohabitation." Thereafter, defendant is required to pay plaintiff $500.00 monthly, and "acknowledges that the resumption of marital relationship shall have no effect on the payment of this amount . . . ."

The express and unambiguous language of the Agreement thus declares that the parties were not contemplating living "separate and apart forever," *Adamee*, 291 N.C. at 391, 230 S.E.2d at 545, when they executed the document, but rather were on the verge of resuming marital relations. Under *Adamee* and *Small*, therefore, the trial court did not err in determining the Agreement was not a separation agreement under G.S. § 52-10.1. *See Robuck v. Robuck*, 20 N.C. App. 374, 201 S.E.2d 557 (1974) (agreement which stated parties "have encountered serious marital difficulties" and one party is contemplating filing for divorce, *id.* at 375, 201 S.E.2d at 558, was not a separation agreement because face of document was silent with respect to parties' desire to live separate and apart), *id.* at 379, 201 S.E.2d at 561; *cf. Stegall v. Stegall*, 100 N.C. App. 398, 411, 397 S.E.2d 306, 313 (1990), *disc. review denied*, 328 N.C. 274, 400 S.E.2d 461 (1991) (from terms of agreement which provide "parties shall henceforth live separate and apart . . . free from all interference, authority and control, direct or indirect, by the other, as fully as if each party were unmarried" and circumstances of execution, "it is obvious" parties intended a separation agreement).

In addition, we note the following language in paragraph five of plaintiff's complaint:

[T]he parties reconciled and entered into a *Post Nuptial Agreement* on April 18, 1988, a copy of which is attached hereto and incorporated by reference . . . . (emphasis added).

Defendant in his answer admitted "the parties entered into a Post Nuptial Agreement which included the language specified in the Complaint," but asserted the language was "void as a matter of public policy." Had plaintiff considered the Agreement as founded upon the separation of the parties rather than a marital contract during cohabitation, that contention should have been forthcoming at the time her suit was instituted. Plaintiff's verified allegation that the Agreement was a "Post Nuptial Agreement" having been admitted by defendant, plaintiff cannot now be heard in this Court to assert a contrary position. *Crawford v. Crawford*, 214 N.C. 614, 618, 200 S.E. 421, 423 (1939) ("in other words, his mouth is shut, and he shall not say, that is not true which he had before in solemn manner asserted to be the truth").

Notwithstanding, plaintiff insists the statement in the Agreement that the parties were living separate and apart at the time of execution renders the document a separation agreement. Even were plaintiff's arguments persuasive, however, it remains well established that resumption of the marital relationship voids executory portions of a separation agreement, *i.e.*, provisions for future alimony payments. *Jones v. Lewis*, 243 N.C. 259, 261, 90 S.E.2d 547, 549 (1955). *See also* Sally Burnett Sharp, *Semantics as Jurisprudence: The Elevation of Form over Substance in the Treatment of Separation Agreements in North Carolina*, 69 N.C.L. Rev. 319, 363 (1991) ("reconciliation voids all executory provisions of a settlement agreement, without regard to whether those provisions concern support or property"). "[E]xecutory provisions of a separation agreement are those in which 'a party binds himself to do or not to do a particular thing *in the future.*' 'Executed' provisions are those which have been carried out, and which require no future performance." *Carlton v. Carlton*, 74 N.C. App. 690, 693, 329 S.E.2d 682, 684 (1985) (citations omitted). Further, should a subsequent separation follow reconciliation, the original agreement is not revived. *Hand v. Hand*, 46 N.C. App. 82, 85, 264 S.E.2d 597, 599, 300 N.C. 556, 270 S.E.2d 107 (1980). Thus, even assuming *arguendo* the document at issue herein to be a separation agreement, when plaintiff and defendant resumed marital relations, any obligation on the part of defendant to pay alimony in the future ceased, the contrary provisions of the Agreement notwithstanding. *See Schultz v. Schultz*, 107 N.C. App. 366, 374, 420 S.E.2d 186, 191 (1992), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993).

[2] However, plaintiff maintains "[i]t is totally irrelevant . . . that the parties reconciled after the entry of the agreement." Because the

WILLIAMS v. WILLIAMS

[120 N.C. App. 707 (1995)]

"property settlement and 'alimony' payment[] [provisions] are mutually dependent," she argues, citing *Love v. Mewborn*, 79 N.C. App. 465, 468, 339 S.E.2d 487, 489 (1986), *disc. review denied*, 317 N.C. 704, 347 S.E.2d 43, reconciliation did not terminate the alimony obligation of defendant set out in the Agreement.

At issue in *Love* was the proviso in a "separation agreement and property settlement" that the husband pay "alimony" in the amount of $800.00 per month for a period of ten years. *Love*, 79 N.C. App. at 465-66, 339 S.E.2d at 488. While this provision *arguendo* was technically "executory" in that the payments continued over a period of time and had not been paid in full, the circumstance in *Love* is distinguishable from that *sub judice* in two respects. First, the payments in *Love* were of defined duration and no clause purported to limit the effect of reconciliation on the parties' agreement; second, while the periodic payments in *Love* were designated "alimony," the evidence, including negotiation correspondence between counsel, indisputably indicated the payments were reciprocal consideration for the wife's relinquishment of her right to certain marital property; reconciliation thus did not affect the payment provisions. *Id.* at 467-68, 339 S.E.2d at 489. *See also Marks v. Marks*, 316 N.C. 447, 454-55, 342 S.E.2d 859, 864 (1986) (the test "is whether the support provisions for the dependent spouse 'and other provisions for a property division between the parties constitute reciprocal consideration for each other.' " (citation omitted)), and *Morrison v. Morrison*, 102 N.C. App. 514, 519, 402 S.E.2d 855, 858 (1991) (if payments not reciprocal consideration for property transfers or if agreement reflects the property settlement was conditioned upon agreement to live separate and apart, executory provisions of the agreement are rescinded upon reconciliation. (citations omitted)).

In addition, defendant argues plaintiff "did not argue" the issue of reciprocal consideration "before the trial court and should not be permitted to raise it for the first time on appeal." Defendant's representation appears to have merit. *See State v. Robbins*, 319 N.C. 465, 496, 356 S.E.2d 279, 298, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987) (theory not presented to trial court and first raised on appeal not properly before appellate court.)

We note plaintiff as appellant bore ultimate responsibility for compilation of the record on appeal and for inclusion therein of evidence and other materials pertinent to the assignments of error raised. *Miller v. Miller*, 92 N.C. App. 351, 353, 374 S.E.2d 467, 468

(1988). No transcript of the hearing below was included in the instant record, and we find no refutation in the record as compiled of defendant's assertion.

Even had plaintiff properly raised the issue below, moreover, her argument is unavailing. The trial court's order stated it ruled

> after review of the Plaintiff's Complaint and Defendant's Answer and Motion, including the Bench Brief presented by the Defendant, and after review of relevant case law, as well as statutes, as well as the arguments of counsel . . . .

As noted above, plaintiff argues the property settlement and alimony payment provisions of the Agreement were "mutually dependent," that is, they constituted reciprocal consideration for each other and are thus deemed "integrated." *Morrison,* 102 N.C. App. at 519, 402 S.E.2d at 858. In *Morrison,* this Court pointed out that:

> [t]here exists a presumption that the provisions of a marital agreement are separable and the burden of proof is on the party claiming that the agreement is integrated. 'This presumption of separability prevails unless the party with the burden to rebut the presumption proves by a preponderance of the evidence that an integrated agreement was in fact intended by the parties.' 'However, where the parties include unequivocal integration or non-integration clauses in the agreement, this language governs.'

*Id.* at 520, 402 S.E.2d at 859 (citations omitted). In *Hayes* v. Hayes, 100 N.C. App. 138, 147-48, 394 S.E.2d 675, 680 (1990), moreover, we emphasized that "[i]n those cases where no . . . explicit clauses exist, an evidentiary hearing to determine the parties' intent is required."

The Agreement herein contains no "unequivocal," *Morrison,* 102 N.C. App. at 520, 402 S.E.2d at 859, language reflecting the parties' intent concerning integration. While it contains the typical "boilerplate" phraseology "in consideration of the mutual covenants herein contained," that statement is contradicted by a later condition to the effect that "if any provision of this agreement is held to be invalid or unenforceable, all other provisions hereof shall nevertheless continue in full force and effect."

The appearance of the incomprehensible expression "intrical" in the Agreement creates further confusion. While the drafter, which the Agreement reveals to have been plaintiff's former counsel, *see Krickhan v. Krickhan,* 34 N.C. App. 363, 367, 238 S.E.2d 184, 187

## WILLIAMS v. WILLIAMS

[120 N.C. App. 707 (1995)]

(1977) (ambiguity in written agreement construed against drafter) may have wished to write "integral," that is not what the Agreement states. The expression "intrical" is not contained in Webster's Third New International Dictionary (1966); it is therefore impossible to assign a meaning to it absent testimony from the drafter as to whether "integral" or some other word was contemplated. *See Bowles v. Bowles*, 237 N.C. 462, 465, 75 S.E.2d 413, 415 (1953) (utilizing Webster's New International Dictionary to ascertain the meaning of word used in separation agreement facilitated court's adherence to " 'the cardinal rule . . . in determining the effect of property settlement agreements,' " *i.e.*, " 'to ascertain the intention of the parties as expressed in the agreement, and to carry out such intention as nearly as may be done without violence to the language used.' " (citation omitted.))

Because the Agreement lacks "unequivocal integration or non-integration" language, *Morrison*, 102 N.C. App. at 520, 402 S.E.2d at 859, and contains ambiguities and inconsistencies, therefore, the presumption of separability of the provisions prevails unless the party with the burden of proof has presented sufficient evidence to convince the trier of fact that an integrated agreement was intended. *Hayes*, 100 N.C. App. at 147, 394 S.E.2d at 680. The court's order, however, reflects that plaintiff presented *no* evidence and nothing in the record suggests plaintiff was in any way thwarted by the trial court from presenting evidence. *See Hayes* at 148, 394 S.E.2d at 680. Plaintiff thus failed in her burden of proof. *See Marks*, 316 N.C. at 458, 342 S.E.2d at 865 (where no evidence appears in record which would support a contrary result, "trial judge's findings must be presumed to have been based on the apparent failure of plaintiff to produce such evidence as was required in order for her to carry her burden of proof.").

The Agreement thus is not an integrated property settlement wherein the executory provision would withstand reconciliation of the signatories.

**[3]** Plaintiff next challenges the trial court's determination that paragraph 8 of the Agreement was void as against public policy. We affirm the court's conclusion.

N.C. Gen. Stat. § 52-10(a) states that "[c]ontracts between husband and wife not inconsistent with public policy are valid . . . ." By implication, therefore, those contracts between spouses which conflict with public policy are void. *See In re Estate of Tucci*, 94 N.C.

App. 428, 437, 380 S.E.2d 782, 787, *disc. review denied*, 325 N.C. 271, 384 S.E.2d 514 (1989), *aff'd per curiam*, 326 N.C. 359, 388 S.E.2d 768 (1990) ("marital agreements must always comply with public policy").

In *Matthews v. Matthews*, 2 N.C. App. 143, 162 S.E.2d 697 (1968), the parties entered into a marital contract following twelve years of marriage and divorced approximately fifteen years subsequent to execution of the contract. *Id.* at 144-45, 162 S.E.2d at 697-98. Plaintiff-husband thereafter petitioned for partition and sale of lands held as tenants in common. *Id.* at 144, 162 S.E.2d at 697. Defendant-wife relied upon the marital contract in which plaintiff had promised "that if I ever leave Edith Summers Matthews, everything I have or will have will be hers to have and hold for the benefit of our children and herself—I make no claim on anything we own jointly, and separately." *Id.* at 145, 162 S.E.2d at 698. Plaintiff's demurrer to the response of defendant was sustained by the trial court. *Id.*

On appeal, this Court determined the contract, "if [it] met the tests of consideration and clarity," *id.* at 147, 162 S.E.2d at 699, would constitute merely "a promise looking to a future separation . . . ." *Id.* We concluded such promises "will not be sustained" because such an agreement

> would induce the wife to goad the husband into separating from her in order that the agreement could be put into effect and she could strip him of all of his property. Our society has been built around the home, and its perpetuation is essential to the welfare of the community. And the law looks with disfavor upon an agreement which will encourage or bring about a destruction of the home.

*Id.* Based on the foregoing reasoning, we held the contract was "unenforceable because it is void on grounds of public policy." *Id.*

Paragraph 8 of the Agreement similarly comprises a promise looking towards a future separation in stating that "should parties hereinafter again separate, [defendant] shall continue to pay permanent alimony of Five Hundred Dollars ($500.00) per month . . . ." Such a proviso would serve to discourage plaintiff from putting forth a concerted effort to maintain the marriage because of the knowledge she would continue to receive alimony regardless of whether the parties separated following reconciliation. Accordingly, the trial court did not err in concluding that paragraph 8 of the Agreement was void as against public policy. *See Morrison*, 102 N.C. App. at 520, 402 S.E.2d

at 859 (*citing Adamee*, 291 N.C. at 391, 230 S.E.2d at 545) ("contracts which provide that reconciliation will not affect the terms of a separation agreement violate the policy behind separation agreements and are therefore void"); *see also Tucci*, 94 N.C. App. at 438, 380 S.E.2d at 788 (public policy will not permit parties to enforce the "separation" provisions of their agreement, *i.e.*, support and alimony, and yet live together as a married couple).

The dissent acknowledges we are bound by precedent set by earlier panels of this Court unless overturned by our Supreme Court, *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), yet declines to respect *Matthews* and subsequent cases neither overruled nor modified by the higher court. The dissent justifies its position by the perception of a purported change in public policy.

Since *Matthews* was decided nearly thirty years ago, the General Assembly, presumed to know the content of the decisions of our courts, *see Whittington v. N.C. Dept. of Human Resources*, 100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990) and *Blackmon v N.C. Dept. of Correction*, 118 N.C. App. 666, 673, 457 S.E.2d 306, 310 (1995), has enacted legislation affecting marital agreements as indicated by the dissent. However, these statutes in nowise abrogate the thrust of *Matthews*, *Tucci* and other decisions to the effect that spouses who lack the intent to "live separate and apart forever," *Adamee*, 291 N.C. at 391, 230 S.E.2d at 545, may *not* contravene public policy by contracting regarding support and alimony. "[W]here the law-making power speaks on a particular subject over which it has power to legislate, public policy in such cases is what the law enacts." *Cauble v. Trexler*, 227 N.C. 307, 311, 42 S.E.2d 77, 80 (1947).

The General Assembly, by declining to negate *Matthews* in subsequent legislation, has spoken, *see In re Taxi* Co., 237 N.C. 373, 376-77, 75 S.E.2d 156, 158-59 (1953) (where a statute sets forth the instances of its coverage, other coverage is necessarily excluded under the maxim *expressio unius est exclusio alterius*, *i.e.*, "the expression of one thing is the exclusion of another"); the dissent misperceives a change in public policy, *see Vinson v. Chappell*, 3 N.C. App. 348, 350, 164 S.E.2d 631, 633, *aff'd*, 275 N.C. 234, 166 S.E.2d 686 (1968) (function of a court is to declare what the law is and not what the law ought to be, and "a court will not ordinarily substitute its judgment for that of the Legislature"). The trial court did not err.

Affirmed.

WILLIAMS v. WILLIAMS

[120 N.C. App. 707 (1995)]

Judge WYNN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree with the majority that under the current law in this State,[1] the Agreement, because it was executed in contemplation of "resumption of cohabitation," is not a separation agreement within the meaning of N.C. Gen. Stat. § 52-10.1. *See In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E.2d 541, 545 (1976) (intent to live separate and apart is "the heart of a separation agreement"). I also agree, for the reasons given by the majority, that the support and property provisions of the Agreement are not integrated and that reconciliation therefore voids the executory provisions of the Agreement.

Although not a separation agreement within the meaning of section 52-10.1, I believe the Agreement qualifies as a valid contract within the meaning of section 52-10. I do not agree with the majority that the Agreement is void on the grounds it is "inconsistent with public policy." I acknowledge that the public policy in 1968, as articulated in the *Matthews* opinion relied on by the majority, would not support the agreement at issue and require that it be rejected as invalid. The *Matthews* opinion does not, however, represent the current public policy with regard to postmarital contracts. The North Carolina General Assembly first evidenced a change in public policy as to marital agreements in 1981 with the adoption of N.C. Gen. Stat. § 50-20(d). This statute permits parties "[b]efore, during or after marriage" to agree to the distribution of the marital property at the time of their separation. Thus, an agreement entered pursuant to this

---

1. The requirement that in order to execute a valid separation agreement the parties must have a present intent to live separate and apart, has been criticized. Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 18.1 (2d ed. 1988). Professor Clark notes that the rule was based on the idea that to permit married parties living together to contract with regard to property division and support rights would in someway be "conducive to divorce." *Id.* "It was never made quite clear why [such an agreement] . . . was always and necessarily conducive to divorce, but the courts assumed that it was." *Id.* He argues that "[n]ow that fault is no longer the basis for the grounds for divorce . . . little is to be served by continuing to reject separation agreements on the ground that they are conducive to divorce." *Id.* "The new [divorce] statutes make it plain that there is no longer any general public policy opposed to divorce. . . . It therefore seems no longer rational to require that the parties separate before they may make a valid separation agreement." *Id.* Although I agree with Professor Clark, I am bound by the previous decisions of this Court and the Supreme Court holding to the contrary.

WILLIAMS v. WILLIAMS

[120 N.C. App. 707 (1995)]

statute is valid even though the parties continue to live together after its execution. *Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E.2d 97 (1984). In 1987 the General Assembly again indicated its choice of public policy when it adopted the Uniform Premarital Agreement Act (UPAA). N.C.G.S. ch. 52B (1987). Prior to the adoption of the UPAA, the public policy forbad some premarital agreements on the grounds that they encouraged divorce. 1 Suzanne Reynolds, *Lee's North Carolina Family Law* § 1.13(B) (5th ed. 1993). Under the UPAA, parties who anticipate marriage are permitted to contract with regard to support and property rights that may arise upon divorce. N.C.G.S. § 52B-4(a) (1987). Thus with regard to property settlement agreements and premarital agreements, the General Assembly has decided that such agreements do not incite divorce or separation but instead promote marital stability by defining the expectations and responsibilities of the parties.

There is no justification for adhering to a different public policy with regard to non-property postmarital agreements, especially when the agreement, as in this case, is entered into between married parties who are not living together. Indeed because N.C. Gen. Stat. § 52B-4(a), N.C. Gen. Stat. § 50-20(d) and N.C. Gen. Stat. § 52-10(a) each relate to contracts in the family, they should be construed together to ascertain the legislative intent. *See Carver v. Carver*, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984). When read *in pari materia*, N.C. Gen. Stat. § 52-10(a) must be construed to reflect the same public policy accepted by the General Assembly in its adoption of N.C. Gen. Stat. § 52B-4(a) and N.C. Gen. Stat. § 50-20(d). Therefore, the Agreement must not be read as discouraging the marriage but instead as encouraging it. Indeed the fact that the parties resumed their marital relationship soon after the Agreement was executed indicates it encouraged, rather than discouraged, resumption of the marriage. As such the Agreement is not inconsistent with the public policy of this State and is enforceable. I would reverse and remand.