***********
Upon review of all of the competent evidence of record with references to the errors assigned and the briefs of the parties, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Hall.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff was employed by defendant P.H. Glatfelter Company (hereinafter "Gladfelter") from November 13, 1989 to August 9, 2001 and RFS Ecusta (hereinafter "RFS") from August 9, 2001 forward.
2. From June 24, 1987 to August 9, 2001, Glatfelter, a Pennsylvania corporation, operated a paper mill in Transylvania County, North Carolina, known as the Ecusta Division, which had three or more employees at all relevant times.
3. Plaintiff/Intervenor North Carolina Department of Insurance (hereinafter "NCDOI") is the state agency responsible for the licensing and regulation of self-insured employers pursuant to N.C. Gen. Stat. § 97-165 et. seq.
4. Defendant North Carolina Self-Insurance Guaranty Association (hereinafter "NCSIGA") is a statutorily created, nonprofit, unincorporated legal entity pursuant to N.C. Gen. Stat. § 97-130 etseq. (hereinafter "Guaranty Act") created to pay only "covered claims" against insolvent member self-insurers.
5. The aforementioned parties are subject to and bound by the applicable provisions of the North Carolina Workers' Compensation Act and the Guaranty Act.
6. On May 23, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment, which was admitted as a compensable injury by Glatfelter.
7. On May 23, 1999, an employee/employer relationship existed between plaintiff and Glatfelter.
8. On May 23, 1999, Glatfelter was self-insured for its workers' compensation liability.
9. Pursuant to a Form 60 filed May 23, 2000, a Form 62 filed August 3, 2001, and a Form 62 filed July 29, 2002, plaintiff was paid compensation for temporary total disability at the rate of $440.11 per week.
10. Plaintiff's most recent period of compensation for temporary total disability paid pursuant to an award of the Commission was from May 28, 2002 to September 30, 2002, at which time RFS stopped payment without following statutory procedures to terminate compensation.
11. The NCDOI, pursuant to Glatfelter's application, afforded Glatfelter a license to self-insure as of January 7, 1992 and, thus, Glatfelter was deemed a member self-insurer of the NCSIGA in accordance with N.C. Gen. Stat. § 97-131.
12. As a requirement to be a self-insured employer in North Carolina, Glatfelter posted a statutory deposit in the form of a surety bond, number 04S100046333BCA-18, which was in the amount of $1.6 million.
13. On or about June 18, 2001, Glatfelter informed the NCDOI that it was "in the process of selling its Ecusta Division, along with the workers' compensation liabilities."
14. On August 9, 2001, Glatfelter executed an Amended and Restated Acquisition Agreement (hereinafter the "Agreement") for the sale of its Ecusta Division, which in pertinent part purportedly transferred the Glatfelter self-insured workers' compensation liabilities of certain Glatfelter employees, including plaintiff, from Glatfelter to the purchaser[s] of the Ecusta Division.
15. On August 9, 2001, Glatfelter and RFS executed an Assumption Agreement, whereby RFS purported to assume the self-insured workers' compensation liabilities of certain Glatfelter employees, including plaintiff.
16. On or about August 24, 2001, Ron Ennis, Senior Financial Analyst with the NCDOI, confirmed receipt of a certificate of deposit by RFS in the amount of $1.6 million to replace the Travelers Surety Bond previously posted by Glatfelter and the NCDOI released the Travelers Surety Bond.
17. Glatfelter requested the NCDOI terminate its license to self-insure and the NCDOI approved the request, terminating Glatfelter's period of self-insurance effective August 24, 2001.
18. RFS purchased workers' compensation insurance for its employees for the period of August 8, 2001 through September 23, 2003.
19. On October 23, 2002, RFS, U.S., Inc. and RFS Ecusta, Inc. filed a Chapter 11 Petition in Bankruptcy in the United States Bankruptcy Court for the District of Delaware (Case No. 02-13110 and 02-13111). By Order entered March 28, 2003 the Delaware Bankruptcy Court transferred the cases to the Western District of North Carolina.
20. Glatfelter is not now and has never been declared insolvent.
21. The NCDOI continues to hold the $1.6 million certificate of deposit to secure the workers' compensation liabilities that arose during Glatfelter's period of self-insurance.
22. The parties stipulated the following exhibits into the evidence of record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — North Carolina Industrial Commission Form 60 dated May 23, 2000;
b. Stipulated Exhibit 2 — North Carolina Industrial Commission Form 62 dated July 29, 2002;
c. Stipulated Exhibit 3 — NCDOI Surety Bond No. 04S100046333BCA-18;
d. Stipulated Exhibit 4 — Bowman correspondence to NCDOI dated June 18, 2001;
e. Stipulated Exhibit 5 — Ennis correspondence to Bowman dated June 21, 2000;
f. Stipulated Exhibit 6 — Certain pertinent parts of the Amended and Restated Acquisition Agreement dated August 9, 2001: (a) Introduction, Page 1, (b) Article I, Definitions, (c) Article II, Section 2.1, (d) Article II, Section 2.3, (e) Article V, Section 5.5, (f) Schedule 2.3(a), (g) Schedule 2.3(b), (h) Schedule 3.9, and (i) Schedule 5.5(a). Glatfelter reserved the right to authenticate and introduce the entire Agreement into the evidentiary record of this matter;
g. Stipulated Exhibit 7 — Assumption Agreement dated August 9, 2001;
h. Stipulated Exhibit 8 — Ennis to Bowman email correspondence dated August 24, 2001;
i. Stipulated Exhibit 9 — Ennis correspondence to Bowman dated August 24, 2001;
j. Stipulated Exhibit 10 — Summaries of RFS Insurance Policies from August 8, 2001 through September 23, 2003;
k. Stipulated Exhibit 11 — Glatfelter's self-insurance license effective January 17, 1992;
l. Stipulated Exhibit 12 — Glatfelter's Application for Certificate of Authority as a Foreign Corporation;
m. Stipulated Exhibit 13 — Glatfelter's Form 11-WC, Agreement and Undertaking of Employer Granted the Privilege of Paying Compensation as a Self-Insurer;
n. Stipulated Exhibit 14 — North Carolina Industrial Commission Form 62 dated August 3, 2001;
o. Stipulated Exhibit 15 — September 6, 2001 memorandum regarding August 2001 Status Report;
p. Stipulated Exhibit 16 — October 2, 2001 memorandum regarding September 2001 Status Report;
q. Stipulated Exhibit 17 — September 25, 2001 memorandum regarding Glatfelter termination of self-insured status;
r. Stipulated Exhibit 18 — Subpoena for Ronald J. Ennis;
s. Stipulated Exhibit 19 — Subpoena for Shirley Pennell;
t. Stipulated Exhibit 20 — Subpoena for Paula Barnes;
u. Stipulated Exhibit 21 — Revised schedule, Purchase Price Allocation Detail;
v. Stipulated Exhibit 22 — Zoning and Site Requirements Summary;
w. Stipulated Exhibit 23 — August 9, 2001 correspondence from counsel for Glatfelter to Purico Limited, RF Son, Inc., RFS US Inc. and RFS Ecusta Inc.;
x. Stipulated Exhibit 24 — correspondence from Dechert to Glatfelter.
23. The issues for determination by the Commission as stipulated by plaintiff, NCDOI and NCSIGA in the Pre-Trial Agreement are:
a. Whether the August 9, 2001, Amended and Restated Acquisition Agreement operated to relieve Glatfelter, in whole or in part, of its obligations created by Article I of the North Carolina Workers' Compensation Act;
b. Whether Glatfelter is liable to plaintiff for payment of his workers' compensation claim;
c. Whether Glatfelter is liable for the payment of workers' compensation claims which arose during the period of its self-insurance;
d. Whether NCSIGA is liable for the payment of plaintiff's workers' compensation claim upon the default of RFS to pay the claim;
e. Does the default by RFS on the payment of workers' compensation claims which arose during Glatfelter's period of self-insurance impose any liability on NCSIGA; and
f. Whether, upon the posting of substitute security with the NCDOI and upon the resolution of any bankruptcy issues with regard to RFS, the $1.6 million statutory deposit being held by NCDOI is available for payment of Glatfelter's workers' compensation claims, which arose during its period of self-insurance.
7. Glatfelter contends that the contested issues are those set out in Chief Deputy Commissioner Steve Gheen's December 3, 2002 Order:
a. Whether Glatfelter and/or NCSIGA is liable for the payment of workers' compensation claims upon the default of RFS to pay claims; and
b. Whether the statutory security deposit being held by the NCDOI is available for the payment of claims.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. During the period of June 24, 1987 to August 9, 2001, Glatfelter operated a paper mill in Transylvania County, North Carolina, known as the Ecusta Division, which had three or more employees at all relevant times. Plaintiff worked for Glatfelter from November 13, 1989 to August 9, 2001.
2. The NCDOI is the state agency responsible for the licensing and regulation of self-insured employers pursuant to N.C. Gen. Stat. §97-165, et seq. NCSIGA is a statutorily created, nonprofit, unincorporated legal entity pursuant to N.C. Gen. Stat. § 97-130, etseq., created to pay "covered claims" against insolvent self-insurers.
3. The North Carolina Industrial Commission, created by statute, is primarily an administrative agency of the State, charged with the duty of administering the Workers' Compensation Act pursuant to N.C. Gen. Stat. § 97-77, et seq.
4. On January 17, 1992, Glatfelter was licensed to self-insure its workers' compensation liabilities. Glatfelter posted the requisite statutory bond in the form of a commercial surety bond issued by Travelers Casualty and Surety Company of America in the amount of $1.6 million. Glatfelter was self-insured from January 17, 1992 through August 24, 2001 and a member of the NCSIGA, which subjected it to assessments pursuant to N.C. Gen. Stat. § 97-165, et seq.
5. On May 23, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment, which was admitted as a compensable injury by Glatfelter on a Form 60 filed May 23, 2000. Pursuant to the Form 60, a Form 62 filed August 3, 2001, and a Form 62 filed July 29, 2002, plaintiff was paid temporary total disability compensation at the rate of $440.11 per week. Plaintiff has received no disability compensation since September 30, 2002.
6. By letter dated June 18, 2001, to Ronald Ennis, Senior Financial Analyst with the NCDOI, Donald Bowman, Corporate Insurance and Credit Manager for Glatfelter, stated that, "The P.H. Glatfelter Company is in the process of selling its Ecusta Division along with the Workers'Compensation liabilities. After the sale we will no longer want or need to be Self-Insured in the State of North Carolina for Workers' Compensation and therefore would like to cancel the Surety Bond we now have." [Emphasis added] Mr. Bowman also said, "In addition, I would appreciate if you would let me know exactly what, if anything else is needed from us to withdraw from being Self-Insured."
7. In a June 21, 2000 [sic] letter from Mr. Ennis to Mr. Bowman, regarding Glatfelter's termination of their self-insured status, Mr. Ennis responded, "According to your letter the North Carolina division of the Company is being acquired by a third party that is assuming all past workers' compensation liabilities accrued during the Company's operation of the division." Mr. Ennis further stated,
 "The surety bond that you have in place may be cancelled
by giving the Commissioner [of Insurance] 60 days written notice. The Surety will remain liable for all obligations and liabilities of the Principal that arose under Chapter 97 of the North Carolina General Statutes. If the acquiring company provides a replacement bond, then the Department will release the Surety Company of any past, present or future liabilities." [Emphasis added]
8. RFS posted a $1.6 million bond with the NCDOI.
9. In an August 24, 2001 email message from Mr. Ennis to Mr. Bowman, Mr. Ennis stated,
 "The NC Department of Insurance received confirmation that RFS Ecusta made a deposit in the amount of $1,600,000 to the Department's correspondent bank to secure the assumption of the liabilities of PH Glatfelter worker's [sic] compensation reserve loss claims. In connection therewith, liability is discharged for all past, present, existing and potential liability for the Travelers Casualty and Surety Company of America, under surety bond 04S100046333BCA-18 effective August 24, 2001, with PH Glatfelter Company as Principal. I will provide to you the original bond and corresponding endorsements in a mailing next week. This also is notification that PH Glatfelter has voluntary [sic] terminated their status as a Self-Insured Employer in the state of North Carolina effective August 24, 2001. If you have any questions call me at 919.733.5633 ext. 250." [Emphasis added]
10. Glatfelter's bond was released by the NCDOI and returned to Glatfelter with the August 24, 2001 letter from Mr. Ennis.
11. The NCDOI never asked Glatfelter to deposit a special release bond.
12. Mr. Bowman mistakenly believed that Glatfelter was released from all of its workers' compensation liabilities when the NCDOI accepted the $1.6 million certificate of deposit from RFS as substitution for Glatfelter's bond. However, when asked if he was ever directly informed that Glatfelter's obligations as an employer in North Carolina were fully discharged under the North Carolina Workers' Compensation Act, Mr. Bowman testified, "I don't recall getting anything saying that we were discharged. . . ."
13. The NCDOI did not have the authority to release Glatfelter from liability for its self-insured workers' compensation claims existing as of August 24, 2001. While Mr. Ennis testified that he did not release Glatfelter from its liabilities under the North Carolina Workers' Compensation Act for existing claims, his September 25, 2001 memorandum to Jo Ann Thorpe, head of the Statistics Section of the Industrial Commission, reveals that he attempted to exercise authority he did not have. Mr. Ennis's memorandum reads,
 "P.H. Glatfelter Company, Inc. recently sold their North Carolina affiliate to RFS Ecusta, a non self-insured employer. Effective August 24, 2001 RFS Escuta [sic] assumed P.H. Glatfelter's outstanding workers' compensation claim liabilities in reference with the sale. In connection therewith, P.H. Glatfelter Company terminated their status as self-insured in North Carolina and RFS Escuta [sic] is the sole entity responsible for P.H. Glatfelter's open claims." [Emphasis added]
14. The NCDOI, through its Senior Financial Analyst Ennis, allowed a substitution of security by permitting the release of Travelers Surety Bond, thereby releasing Travelers from the liability of its principal, Glatfelter, by means of substitution of RFS's $1.6 million certificate of deposit. Mr. Ennis did not require Glatfelter to post a special release bond issued by a corporate surety upon Glatfelter's cessation as a self-insured employer under the Act on August 24, 2001.
15. Mr. Bowman's belief that Glatfelter had been released from its liability for payment of existing claims during the period of self-insurance in favor of RFS was not well founded. The NCDOI, through Mr. Ennis, in an internal memorandum to Mr. Ennis's supervisor and an external communication to Ms. Thorpe of the Commission Statistics Section, reported that RFS had assumed liability for Glatfelter's self-insured workers' compensation claims. It should be noted that Mr. Ennis's October 2, 2001 memorandum to Ms. Thorpe was written after Glatfelter had executed the purchase agreement with RFS and there is no evidence that Mr. Bowman was aware of Mr. Ennis's memorandum at the time. Glatfelter did not rely on any representations of the NCDOI or the Industrial Commission prior to entering into the acquisition agreement. Glatfelter received a letter dated August 9, 2001 from the Law Offices of Ballard, Spahr, Andrews Ingersoll regarding the effect of the Amended and Restated Acquisition Agreement. Glatfelter's own attorneys stated "The opinions expressed herein are limited to the federal laws of the United States of America, the General Corporation Law of the State of Delaware and the laws of the Commonwealth of Pennsylvania, and we express no opinion concerning the laws of any other jurisdiction." Glatfelter, therefore, did not obtain a legal opinion as to the effect of the Amended and Restated Acquisition Agreement under the laws of the State of North Carolina.
16. RFS, Glatfelter's purported successor in interest for its workers' compensation liabilities, never applied for or submitted the requisite documentation necessary to qualify as a licensed self-insured employer under the North Carolina Workers' Compensation Act. The NCDOI did not require RFS to become self-insured in order to post the replacement bond. RFS never was a qualified self-insurer and therefore was not a member self-insured of NCSIGA.
17. RFS was insured by PMA Insurance Company for the periods August 8, 2001 through August 8, 2002 and from August 8, 2002 through September 23, 2002 and by Travelers Insurance Company from September 23, 2002 through September 23, 2003 for claims arising during these stated periods and not for any claims pending prior to these periods of coverage.
18. Despite Mr. Ennis's testimony that he did not purport to release Glatfelter from liability for its existing workers' compensation claim liability when Glatfelter ceased its status as a licensed self-insurer, Mr. Ennis's action in permitting RFS to post a bond instead of requiring a special release bond and his memorandum to Ms. Thorpe strongly suggest that Mr. Ennis may have believed at the time that RFS would assume Glatfelter's existing workers' compensation liabilities. These facts support Mr. Bowman's testimony that "it was my opinion that we were relieved from the State with what Mr. Ennis sent," based on his communications with Mr. Ennis that RFS could and was lawfully assuming Glatfelter's existing liabilities.
19. The Full Commission finds Glatfelter's defense of this claim is not without reasonable grounds. In addition, it appears the legal issues in this case are of first impression in North Carolina.
20. This matter was appealed to the Full Commission by defendant Glatfelter from an Opinion and Award awarding benefits and results in the affirmation of that award.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has subject matter jurisdiction over this action and personal jurisdiction over each of the parties. N.C. Gen. Stat. §§ 97-3; 97-91; North Carolina Ins. Guar.Ass'n v. International Paper Co., 152 N.C. App. 224, 569 S.E.2d 285,disc. rev. denied, 356 N.C. 438, 572 S.E.2d 786 (2002). No other parties are necessary in this cause of action, in that RFS was the only "Buyer" who purported to assume any liability for Glatfelter's workers' compensation obligations and RFS is subject to the protection of the United States Bankruptcy Court for the Western District of North Carolina.
2. There is no mechanism in the statutory scheme that permits a self-insured employer to transfer its potential liabilities for workers' compensation claims by private contractual agreement. N.C. Gen. Stat. § 97-6 provides that: "No contract or agreement, written or implied, no rule, regulation, or other device shall in any manner operate to relieve an employer in whole or in part, of any obligation created by this Article, except as herein otherwise expressly provided." A contract that violates a statutory provision is illegal and void. Perkins v.Arkansas Trucking Servs., Inc., 351 N.C. 634, 528 S.E.2d 902 (2000); Rothv. McCord, 232 N.C. 678, 62 S.E.2d 64 (1950); Cauble v. Trexler,227 N.C. 307, 42 S.E.2d 77 (1947). The agreements between Glatfelter and RFS, to the extent the agreements purported to transfer Glatfelter's workers' compensation liabilities under the North Carolina Workers' Compensation Act, are void ab initio as a matter of law and as a matter of public policy and do not operate in any manner to relieve Glatfelter of any obligation which arose during its period of self-insurance coverage, from January 7, 1992 to August 24, 2001. Therefore, there was no valid transfer of Glatfelter's workers' compensation liabilities to RFS. N.C. Gen. Stat. §§ 97-1 et seq., 97-6.3. An employer always has primary liability for any award granted by the Industrial Commission. N.C. Gen. Stat. §§ 97-3; 97-9; Roberts v. Coal Co., 210 N.C. 17,185 S.E. 438 (1936); Tucker v. Workable Company, Inc., 129 N.C. App. 695,501 S.E.2d 360 (1998). Therefore, plaintiff is entitled to have Glatfelter pay his workers' compensation claim, which arose during its period of qualification as a self-insured employer.
4. While Glatfelter can cease to be self-insured, the self-insured must still fully discharge all of its obligations under the Act. N.C. Gen. Stat. § 97-185. The statute provides:
 "If a self-insurer ceases to self-insure or desires to replace securities with an acceptable surety bond or bonds, the self-insurer shall notify the Commissioner [of Insurance], and may recover all or a portion of the securities deposited with the Commissioner [of Insurance] upon posting instead an acceptable special release bond issued by a corporate surety in an amount equal to the total value of the securities. The special release bond shall cover all existing liabilities under the Act plus an amount to cover future loss development and shall remain in force until all obligations under the Act have been discharged fully." N.C. Gen. Stat. § 97-185(g). [Emphasis added]
"`Corporate surety' means an insurance company authorized by the Commissioner [of Insurance] to write surety business in this State." N.C. Gen. Stat. § 97-165(5).
5. "If a self-insurer ceases to self-insure, no deposits shall be released by the Commissioner [of Insurance] until the self-insurer hasdischarged fully all of the self-insurer's obligations under the Act." N.C. Gen. Stat. § 97-185(h). [Emphasis added] Glatfelter's bond should not have been released by NCDOI without the posting of a "special release bond" because Glatfelter has not fully discharged all its obligations under the Act.
6. The so-called assumption of Glatfelter's workers' compensation liabilities was part of the negotiated contract sales price for the sale of the Ecusta Division. The RFS bond was obtained on behalf of and for the benefit of Glatfelter for the purpose of securing Glatfelter's workers' compensation obligations pending at the time of the sale of the Ecusta Division to RFS. As provided in N.C. Gen. Stat. § 97-185, the purpose of the bond is to secure, at least in part, the self-insurer's claims liability to insure that injured workers' injuries on the job will be properly compensated, irrespective of the employer's financial condition. Apparently Glatfelter relied on the posting of the surety bond by RFS to bring Glatfelter into compliance with N.C. Gen. Stat. §97-185. However, the bond posted by RFS for the benefit of Glatfelter does not qualify as a "special release bond," as RFS was not a "corporate surety" as defined by N.C. Gen. Stat. § 97-165(5).
7. It appears that as to plaintiff's claim, and for other Glatfelter employees similarly situated, Glatfelter is currently neither a qualified self-insured nor does it have workers' compensation insurance coverage. The Commission has the authority to enforce the statutory provisions that require an employer to take whatever steps are necessary to come into compliance with the statutory requirement of workers' compensation coverage. N.C. Gen. Stat. § 97-94.
8. Pursuant to N.C. Gen. Stat. § 97-130(4), NCSIGA is liable only for "covered claims," defined as "an unpaid claim against an insolvent self-insurer that relates to an injury that occurs while the self-insurer is a member of the Association. . . ." Id. Therefore, NCSIGA's potential liability is not at issue and NCSIGA is not a necessary party to this action.
9. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
10. Plaintiff is entitled to an attorney's fee assessed against Glatfelter in the amount of $2,000.00 pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Since the purpose of the surety bond was to insure Glatfelter's workers' compensation obligations, the bond monies should be available for that purpose and therefore the parties shall immediately take the necessary steps to effectuate the underlying purpose for which the bond was issued.
2. Glatfelter is hereby ORDERED to secure its obligations under the Act as required by N.C. Gen. Stat. § 97-93 by either re-qualifying as a self-insurer or posting a special release bond in such amount as the Commissioner of Insurance deems appropriate.
3. Glatfelter is hereby ORDERED to make payment of disability compensation and medical compensation to plaintiff for his admittedly compensable workers' compensation claim.
4. Plaintiff moved that the Commission order Glatfelter to pay compensation to plaintiff pending appeal, pursuant to N.C. Gen. Stat. § 97-86.1, which motion was granted by Order of an Administrative Panel of the Full Commission on July 29, 2003. Glatfelter appealed to the North Carolina Court of Appeals but subsequently dismissed its appeal. Thereafter, the Administrative Panel vacated its July 29, 2003 order so that the undersigned panel of the Full Commission could determine this and all other pending issues in this matter. In that this claim is admittedly compensable, the amount of compensation is not disputed, and the only issue is which employer is liable for payment of compensation, plaintiff's motion for an order of compensation pending appeal, pursuant to N.C. Gen. Stat. § 97-86.1, is GRANTED. Glatfelter is HEREBY ORDERED to pay plaintiff compensation awarded in Award Paragraph 1 pending appeal to the North Carolina Court of Appeals. In the event that Glatfelter is not ultimately liable for the amount paid, the employer/carrier found ultimately responsible shall be ordered to reimburse Glatfelter for compensation paid to plaintiff.
5. The North Carolina Self-Insured Insurance Guaranty Association is DISMISSED as a party in this action.
6. The parties' requests for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 are hereby DENIED.
7. Glatfelter shall pay the costs, including a reasonable attorney's fee in the amount of $2,000.00 to plaintiff's attorneys.
This the 13th day of January 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/kjd